In re BOKUM RESOURCES
CORPORATION, a Delaware
corporation, Debtor.

LONG ISLAND LIGHTING CO., INC.,
et al., Petitioners,

v.

BOKUM RESOURCES CORPORATION,
Respondent.

Civ. No. 82–087–JB.

United States District Court,
D. New Mexico.

July 13, 1982.

Montgomery & Andrews, John Conway, Nancy Anderson, Santa Fe, N.M., Murphy, Weir & Butler, Patrick A. Murphy, J. Craig Gilliland, San Francisco, Cal., Davis, Polk & Wardwell, Michael Mills, New York City, for petitioners.

Melton & Puccini, PA., Louis Puccini, Jr., Albuquerque, N.M., for respondent.

## MEMORANDUM OPINION

BURCIAGA, District Judge.

THIS MATTER comes before the Court on appeal from the Bankruptcy Court for this district. At issue is the propriety of an order of the Bankruptcy Court placing Bokum Resources Corporation into involuntary bankruptcy under 11 U.S.C. § 303 (Supp. IV 1980). For the reasons stated below, the order of the Bankruptcy Court will be affirmed.

On June 12, 1981, ten creditors of Bokum Resources Corporation [Bokum] filed a petition in the United States Bankruptcy Court seeking a reorganization of the company

under Chapter 11 of the Bankruptcy Code. In the early 1970's, Bokum began constructing a uranium mine and mill near Marquez, New Mexico. Neither the mine nor the mill were ever completed, and large debts have accumulated. Bokum estimates the completion costs to be about $20 million. The petition was filed under Bankruptcy Code Section 303, which provides:

> (b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> > \* \* \* \* \* \*
>
> (h) If the petition is not timely controverted, the court shall order relief against the debtor in any involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
>
> > (1) the debtor is generally not paying such debtor's debts as such debts become due; ....

Under Section 303(h)(1), the issues to be determined at the outset of an involuntary bankruptcy case are twofold: first, whether there are three creditors with proper claims, and second, whether the debtor is generally not paying its debts as they become due. Upon finding that there are three qualified creditors and that the debtor is not paying its debts, the Bankruptcy Court must enter an order for relief, thereby bringing the debtor's assets under the protection of the Bankruptcy Court. As the case continues, claims by and against all creditors may then be determined.

Bokum's response to the petition pleaded eighteen affirmative defenses and seven counterclaims, most of them directed against Long Island Lighting Company [LILCO], the largest of Bokum's alleged creditors. Nearly all of these matters had been raised in an earlier foreclosure action brought by LILCO against Bokum, filed in the United States District Court for the District of New Mexico, Civ. No. 80–912–JB. Seeking damages of about $700 million, the principal counterclaims—like the affirmative defenses—attack nearly every aspect of LILCO's dealings with Bokum over a five-year period. Two other counterclaims, apparently claims of malicious prosecution, demanded $1 billion in damages from all the petitioners for their part in an alleged conspiracy orchestrated by LILCO to place Bokum in bankruptcy. Those two counterclaims were dismissed by order of the Bankruptcy Court filed December 29, 1981.

After a status conference on September 9, 1981, the Bankruptcy Court severed the claims by and against LILCO from the claims by and against the other petitioning creditors. There were only seven petitioners other than LILCO by this time, two having withdrawn during the summer. Trial was set for November 9, 1981, with discovery to be completed by October 23, 1981.

The Bankruptcy Court's orders framed for trial the limited issues necessary to determine whether an order for relief should be entered. As set out in the Court's Pretrial Order, these issues were principally "[t]he amount and sufficiency of each claim of each petitioning creditor" and "[w]hether the alleged Debtor is generally paying its debts as they become due." The Pretrial Order also reviewed Bokum's affirmative defenses, striking those without legal foundation, deferring those relating to LILCO or the petitioners' good faith, and setting the remaining defenses for trial. On the issues as framed, the Court ordered trial without a jury.

On September 23, 1981, Bokum moved to dismiss the petition on the grounds that "an independent third party" named William Biava had offered to acquire the claims of the petitioning creditors other than LILCO

for 70 cents on the dollar. In accordance with Bankruptcy Rule 120(a), the Bankruptcy Court gave notice to all of Bokum's creditors, reciting the substance of the motion and stating that the Bankruptcy Code and Rules allowed other creditors to join as petitioners before dismissal of the case. The Court set a deadline for joining, and required filing of a written election to join.

Counsel for both LILCO and Mr. Biava wrote to all creditors, explaining the Bankruptcy Court's order. Counsel for LILCO repeated the Court's notice and enclosed a blank form of election to join. Counsel for Mr. Biava warned that creditors joining the petition would not be bought out, and that Biava's offer extended only to the original seven who had joined the petition in June, 1981.

From the date of the Bankruptcy Court's notice to the date of trial, approximately 40 creditors filed elections pursuant to the Court's notice. About twenty of the new creditors eventually sought to withdraw, as did the original seven creditors whose claims had been bought by Mr. Biava. The Court did not rule on the requests by the intervenors, but denied the motions to withdraw of the original seven petitioners on the grounds that the activities of Mr. Biava "cannot be permitted to operate to deprive the Court of jurisdiction to consider the petition as filed."

At trial, when Bokum renewed its effort to defeat the status of the original seven as petitioning creditors, it became clear that the creditors' claims had not been bought by a truly "independent" party. Rather, the buyer was a former executive and significant shareholder of Bokum who bought the claims for the express purpose of stopping the bankruptcy proceedings. He did so with a loan he secured by certificates of deposit in the name of Richard D. Bokum, President of Bokum Resources.

Seventeen creditors of Bokum with claims totaling approximately $107,000 appeared at trial. Ten creditors proved without contradiction that their claims were past due on June 12, 1981, and were unpaid, unsecured, undisputed, liquidated, and not contingent as to liability. Of these ten, six neither sold their claims nor made a motion to withdraw. Briefly stated, the evidence with respect to each creditor was as follows.

*ABF Freight System, Inc.,* had, before selling out to Mr. Biava, a claim of $4,362.00. Bokum offered no challenge to this creditor or its claim.

*Albuquerque Analytical, Inc.,* had a claim of $93.04, $73.04 of which was past due June 12, 1981.

*Capitol Motor Co.* had a claim of at least $566.25. Bokum offered no challenge to this creditor or its claim.

*Complete Finance Corp.* had, before selling out to Mr. Biava, a claim of $4,098.82. Although Bokum asserted that this claim was disputed, it was a sufficient claim to make Complete Finance an eligible petitioner.

*Contact New Mexico, Inc.,* had, before selling out to Mr. Biava, a claim of $4,937.64. Bokum offered no challenge to this creditor or its claim.

*Controls for Environmental Pollution, Inc.,* had a claim of $9,153.70. Bokum offered no challenge to this creditor or its claim.

*Denver Tool Crib* had a claim of $589.71. Bokum offered no challenge to this creditor or its claim.

*General Electric Co.* had an unsecured claim of $40,364.98. General Electric may also have had a secured claim, but that did not disqualify it as a petitioner.

*Genuine Parts Co.* had a claim of $777.39. Bokum offered no challenge to this creditor or its claim.

*General Office Supply* had a claim of $998.80. Bokum offered no challenge to this creditor or its claim.

*Kaman Bearing & Supply Corp.* had, before selling out to Mr. Biava, a claim of $13,309.67. That Kaman's claim may have been secured did not necessarily disqualify it as a petitioner.

*Keenan Supply, Inc.,* had a claim of $1,528.95. Bokum offered no challenge to this creditor or its claim.

*Laun-Dry Supply Co., Inc.,* had a claim of $604.95. Although Mr. Briscoe testified that Bokum had sent approximately $700 in payment of this claim to an agent of Laun-Dry, the company's vice president denied that the claim had been paid and testified that the purported agent was not an agent and was unknown to Laun-Dry.

*Mesa Blueprint* had a claim of $1,798.52. Although Bokum argued that this claim was secured, the record indicated that it was not.

*Specialty Equipment Co.* had, before assignment to Mr. Biava, a claim of $6,368.18. Bokum offered no challenge to this creditor or its claim.

*Springer Building Materials Corp.* had, before selling out to Mr. Biava, a claim of $11,117.08. Springer's claim may have been secured, but that did not disqualify it as a petitioner.

*Watson Manufacturing, Inc.,* had, before selling out to Mr. Biava, a claim of $6,174.42. Bokum offered no challenge to this creditor or its claim.

The evidence tended to show that Bokum was not generally paying its debts as they became due. For each of the three most recent quarters for which Bokum's Accounts Payable Report was available, the report had shown total trade accounts payable of approximately $3,000,000. As of October 14, 1981, Bokum's List of Creditors showed amounts unpaid and due to creditors other than LILCO of approximately $6,500,000. Aside from the creditors whose claims were challenged by Bokum, there were 93 of Bokum's 292 creditors with unchanged balances due from January 31 to October 14, 1981. Another 19 had balances that increased during that time.

Liens totaling $1,359,632 had been filed by 45 creditors as of January 21, 1981, and had not been satisfied. Judgments totaling $539,569.87 had been obtained by 15 creditors, including a judgment for $60,000 by Greyback Consolidated, Inc., in which the court ordered sale of Bokum's properties by a special master. Obligations "in technical default" totaled $74,145,000 on October 31, 1980, and $71,100,000 on July 31, 1981. In the first three quarters of the fiscal year ended October 31, Bokum had suffered a net loss of $499,027. Total current liabilities as of July 31, were $18,167,618.95. Finally, Bokum had been unable to pay the claims of the petitioning creditors.

Bokum argues that the Bankruptcy Judge, the Honorable Glen Keller, erred by refusing to disqualify himself from hearing the matter. Bokum filed its motion for disqualification less than two hours before the hearing on the merits of the involuntary petition. Bokum now urges that Judge Keller's denial of this eleventh-hour motion is grounds for reversal. This argument is without merit.

■ This matter is governed by 28 U.S. C.A. § 455 (Supp.1982), which provides, in pertinent part, as follows:

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party . . . .

This section is construed *in pari materia* with 28 U.S.C. § 144 (1976) which deals with disqualification of a United States District Judge. *In re International Business Machines Corp.,* 618 F.2d 923 (2d Cir.1980); *United States v. Conforte,* 457 F.Supp. 641 (D.Nev.), *aff'd,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 437 F.Supp. 230 (D.Haw.1977). Bokum urges that the procedural requirements of § 144 should be followed in cases dealing with § 455. The Court agrees, but finds that Bokum's arguments lack merit due to its failure to comply with those very requirements.

■■ While there is no specific requirement in § 455 that a motion to disqualify be timely, many courts have found the timeliness requirement to be implicit in the statute. *In re International Business Machines Corp., supra; United States v. Con-*

*forte, supra; City of Cleveland v. Cleveland Electric Illuminating Co.,* 503 F.Supp. 368 (D.Ohio 1980); *Bradley v. Milliken,* 426 F.Supp. 929 (D.Mich.1977). A party seeking disqualifications of a judge must do so at the earliest moment after gaining knowledge of the facts forming the basis for such disqualification. *United States v. Kelly,* 519 F.Supp. 1029 (D.Mass.1981). In the instant case, the facts which formed the basis of the appellant's motion to disqualify were known to the appellant at least a month before trial, yet the appellant waited until the morning of trial to file its motion. In these circumstances, the motion takes on the appearance of a last-ditch effort to avoid an involuntary bankruptcy petition which could not be defended against on the merits. The Court holds that the appellant's failure to file the motion until the day of trial renders it untimely in these circumstances.

Even if the motion could be considered timely, the Court finds that it was without merit in any event. The facts urged by Bokum as the basis for the motion fail to even suggest bias or partiality on the part of Judge Keller. Most of the acts cited as indicating partiality were official acts of the Bankruptcy Court. The Bankruptcy Court denied myriad motions by the appellants, all of which appear to have been raised for the purpose of delaying the proceeding. (Indeed, Bokum argues that Judge Keller's expressed desire to expedite the resolution of the matter indicates bias. However, Judge Keller's desire was plainly consistent with Interim Bankruptcy Rule 1009, which mandates that contested involuntary petitions be resolved "at the earliest practicable time.") As shown in other parts of this opinion, Judge Keller's rulings were proper. The fact that Bokum's motions were consistently denied is more revealing of their uniform lack of merit than of any bias on the part of the judge.

■ In reviewing the denial of the motion to disqualify under § 455, the Court on appeal determines only whether the lower court abused its discretion. H.R. No. 1453, 93rd Cong., 2d Sess. (1974), *reprinted in*

1974 U.S.Code Cong. & Admin.News 6351, 6355; *Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). Although intemperate statements from the bench may provide a basis for a finding of bias, *see United States v. Ritter,* 540 F.2d 459 (10th Cir.1976), the mere fact that a judge has consistently ruled for or against one party cannot, standing alone, provide the basis for such a finding. *In re International Business Machines Corp., supra.* The reason for this rule should be obvious. "[The recusal statute] was never intended to enable a litigant to oust a judge for adverse rulings made, for such rulings are reviewable otherwise . . . ." *Ex parte American Steel Barrel Co.,* 230 U.S. 35, 44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913). Moreover, "[a] trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. . . . 'A timid judge, like a biased judge, is intrinsically a lawless judge.' [citation omitted]." *In re International Business Machines Corp.,* 618 F.2d 923, 929 (2d Cir.1980).

■ The standard to be applied by a judge who is the subject of a motion to disqualify is whether, under all of the circumstances, a reasonable person who knows all of the facts might question his impartiality. *Hepperle v. Johnston,* 590 F.2d 609, 614 (5th Cir.1979); *United States v. Bray,* 546 F.2d 851, 860 (10th Cir.1976); H.R. No. 1453, *supra, reprinted in* 1974 U.S.Code Cong. & Admin.News at 6355. Having reviewed the entire record, the Court concludes that Judge Keller's rulings were at all times proper and evidence no bias against Bokum or its counsel.

Two other facts put forward by Bokum as indicating bias shall be dealt with specifically. Richard Bokum stated by affidavit that he believed the judge showed undue friendliness and deference to counsel for LILCO, and that he believed this to be a result of some long-standing acquaintance. The Judge properly corrected this obvious

misconception by noting that he had met counsel for LILCO on one previous occasion, and that his acquaintance with Bokum's counsel was much more extensive.

Finally, Richard Bokum stated that Judge Keller's tone towards Bokum's counsel was harsh and angry, and that on one occasion the judge's face was red with anger when he spoke to counsel for Bokum. Of course, the sterility of the record on appeal makes it impossible for the Court to know whether this is true. Suffice it to say that the transcripts show Judge Keller's statements to be free from any indication of animosity towards Bokum's counsel. If indeed the judge became angry, that anger would be understandable in light of the insistence of Bokum's counsel on pursuing meritless motions and his repeated attempts to introduce evidence to which objections had previously been sustained. "Judges, while expected to possess more than the average amount of self-restraint, are still only human. They do not possess limitless ability, once passion is aroused, to resist provocation." *United States v. Weiss*, 491 F.2d 460, 468 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974).

The Court has reviewed the entire record and concludes that there is nothing from which a reasonable person might conclude that Judge Keller was biased or partial. It follows that the judge did not abuse his discretion in denying Bokum's motion to disqualify. The judgment of the Bankruptcy Court as to this matter must therefore be affirmed.

The bulk of the appellant's argument on appeal is that there were not enough qualified petitioning creditors to force Bokum into involuntary bankruptcy under 11 U.S.C. § 303. Only three qualified creditors are required, and over forty-five creditors eventually joined the proceedings. Nonetheless, Bokum argues that the correction of multiple errors by the Bankruptcy Court would reduce the number of qualified creditors to less than three. Each argument will be addressed separately.

Bokum first argues that the verifications executed by the seven original petitioners of the petition are invalid. Bokum argues that a corporate agent's authority to verify such a petition must appear on the fact of the verification, *see In re Bellah*, 116 F. 69 (D.Del.1902), and that the agent's authority must be specifically conferred by a corporate by-law or resolution. *See Roche v. Fox*, 20 F.Cas. 1065 (D.Wis.1877) (No. 11, 974); *In re McNaughton*, 16 F.Cas. 323 (D.Mich.1873) (No. 8, 912). According to the appellant, the invalid verifications render all seven of the original petitioners and some unspecified number of the intervenors unqualified under 11 U.S.C. § 303.

The Court finds that appellant's argument is not well-taken. Although there is some dispute in the case law, the better-reasoned opinions do not require the procedural measures proposed by the appellant. There is no requirement that the corporation adopt a resolution granting an agent the authority to sign an involuntary bankruptcy petition. *In re Eastern Supply Co.*, 267 F.2d 776 (3rd Cir.1959). Nor does an agent's authority need to be shown in any specified fashion in the verification to the petition. *In re Pearl Coal Co.*, 115 F.2d 158 (3d Cir.1940). Where the president of a corporation verifies the petition on the corporation's behalf, a showing of a specific grant of authority is clearly unnecessary. "It cannot be doubted that, since a corporation must act through some agent, a verification on its behalf may be legally made by its president." *Walker v. Woodside*, 164 F. 680, 681 (9th Cir.1908). Indeed, verification by any authorized agent is sufficient, and the agent's authority "does not need to be in writing if, in fact, it existed." *In re Pearl Coal Co.*, *supra* at 160. Clearly, the failure of the petitioners to specify and show the source of their authority in the verifications does not render the petition invalid.

The fact of the authority of the various agents verifying the petition was established at the hearing. In each instance, there was sufficient evidence produced for the Bankruptcy Court to reasonably conclude that the signors for the corporate parties had the authority to involve

their corporations in involuntary bankruptcy proceedings. Such findings are to be affirmed on appeal unless clearly erroneous. *In re White House Decorating Co.,* 607 F.2d 907 (10th Cir.1979). The record shows no error and the findings of the lower court as to this issue are affirmed.

■■■■ The appellant next argues that the form of the verifications are improper as to several petitioners who merely had their signatures "acknowledged" under New Mexico form. The appellant argues that the verification must be under oath and that mere "acknowledgement" is insufficient under Fed.R.Bankr.P. 109. Rule 109 provides only that all petitions must be verified. The verifications of the original seven creditors followed this form:

> I, ___(name)___, a duly authorized officer of __(name of corporation)__, . . . certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Four of the seven verifications are "acknowledged," and three are notarized.

These verifications are clearly sufficient. 28 U.S.C.A. § 1746 (Supp.1982) provides in part as follows:

> Wherever, under any law of the United States or under any rule . . . made pursuant to law, any matter is required . . . to be supported . . . by the sworn declaration, verification, . . . [or] oath, in writing of the person making the same, . . . such matter may, with like force and effect, be supported . . . by the unsworn . . . verification . . . in writing of such person which is subscribed by him, as true under penalty of perjury and dated, in substantially the following form:
>
> (1) If executed within the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct . . . ."

The verifications in this case are in substantially the form authorized by the statute. A rule of court requiring that a verification be notarized does not apply to verifications in the form authorized by § 1746. *Carter v. Clark,* 616 F.2d 228 (5th Cir.1980). Therefore, even if Rule 109 is construed to require verifications to be notarized, the Rule is superceded by 28 U.S.C.A. § 1746. The appellant's argument is therefore without merit.

■■■■ Bokum next argues that none of the intervening creditors qualified because their "Notice[s] of Election to Join as Petitioning Creditor[s]" were not verified and were not in the form of a motion to intervene. As to the lack of verifications, the appellant cites no authority requiring intervening creditors to submit verified pleadings. Rule 109 requires only "petitions, schedules, statements of affairs, and amendments thereto" to be verified. Whether the pleadings submitted by the intervening creditors be called motions or notices, Rule 109 does not apply. Therefore, the fact that these pleadings were not verified is of no moment.

■■■■ Similarly, the fact that the intervening creditors did not file a formal motion to intervene makes no difference. It is true that Bankruptcy Rule 724 generally requires prospective intervenors to file a motion in the form required by Fed.R. Civ.P. 24. However, Bankruptcy Rule 121, which directs that Rule 724 be applied to cases such as this, also allows the Bankruptcy Court to direct alternative procedures. In this case, the Bankruptcy Court, in the "Notice of Motion to Dismiss," told Bokum's creditors that they could join the proceedings as petitioning creditors "by filing with the court a written election to join." (R. II, 336). By so doing, the lower court allowed the intervenors to come into the lawsuit without the formality entailed in a motion to intervene. To allow this alternative procedure is within the Bankruptcy Court's discretion. Moreover, where there is an involuntary petition, streamlined procedures are particularly appropriate due to the need for expeditious resolution of such matters. *See* Interim Bankruptcy Rule 1009. Therefore, the Court concludes that the intervening creditors were properly included in the proceedings on the basis of the "Notice of Election to Join as Petitioning Creditor" filed by them.

██ This conclusion is strengthened by the fact that the appellant has shown no prejudice to have resulted from the procedures followed by the Bankruptcy Court. The appellant asserts that it did not receive adequate notice of the claims of the intervenors, but that assertion is belied by the record. The notices filed by the intervenors contains the creditors' names and the amount Bokum owed them. "While the applications to join as petitioning creditors are not artfully drawn, the sense of the creditor's intention is clear. The Court has no authority to deny intervention if the application to intervene is timely and the creditor otherwise qualified." *In re North County Chrysler Plymouth, Inc.,* 13 B.R. 393, 399 (Bkrtcy.W.D.Mo.1981). The appellant's argument on this issue is without merit.

██ The appellant's next argument against the propriety of the intervening creditors being brought into the case relates to the "Notice of Motion to Dismiss and Right to Join as Petitioning Creditors" which was sent to Bokum creditors at the direction of the Bankruptcy Court. The appellant argues that the notice sent by the Court, either alone or in combination with a memorandum sent by counsel for LILCO, was confusing to the creditors and caused them to join in the proceedings under a misapprehension as to the nature of the proceedings.

The appellant produced evidence at the hearing tending to show that there was some confusion among certain of the creditors as to the effect of their intervention. Some creditors apparently believed that by joining as a petitioning creditor, they would be able to take advantage of Biava's offer to buy out the claims of the original seven petitioners for seventy cents on the dollar. While there is nothing to indicate any intentional attempt to mislead potential intervenors, a fair reading of the Bankruptcy Court's notice and the memorandum sent by counsel for LILCO indicates that this confusion on the part of the creditors was not unreasonable in light of the wording of these documents.

However, the appellant makes too much of this apparent confusion. Shortly after the notice and memorandum were sent to Bokum's creditors, counsel for Biava sent a letter to the creditors explaining that Biava's offer to buy out the claims did not apply to any but the original seven petitioners. Although a number of the intervenors subsequently sought to withdraw, approximately seventeen did not. Of these seventeen, at least six appeared at the hearing and offered testimony to prove their claims against Bokum. These six intervenors were Capitol Motor Company, Controls for Environmental Pollution, Inc., Denver Tool Crib, General Office Supply, Genuine Parts Company and Keenan Supply, Inc. These six parties presented evidence that Bokum owed them a total of at least $13,614.80, which amount was due and owing at the time the original petition was filed. There were, therefore, at least six intervenors, with claims totalling over $13,000, as to whom Bokum showed no evidence of confusion due to the notice and memorandum, and who never moved to withdraw as petitioning creditors. Since 11 U.S.C. § 303 requires only three creditors with claims totalling $5,000 to support an involuntary bankruptcy petition, it is clear that if the lower court erred by sending out a confusing notice to the creditors, that error was harmless and does not require reversal.

██ The appellant's next argument goes to the refusal of the court below to allow the seven original petitioners to withdraw from the case. The appellant cites no authority for its position, but instead relies on a perceived general policy of the Bankruptcy Code to give a debtor every opportunity to avoid bankruptcy. This argument is without merit.

The evidence clearly shows that Biava is a long-time business associate of Bokum president Richard D. Bokum. Biava holds 100,000 shares of Bokum stock. Biava borrowed money in order to buy out the seven original petitioners, and the loan was secured by a certificate of deposit owned by Richard D. Bokum. Biava's express purpose in buying out the original petitioners

was to stop the bankruptcy proceedings. Biava had discussed this plan with Richard Bokum prior to making his offer to the original petitioners, and Mr. Bokum had agreed to provide the security necessary for Biava to obtain the loan.

The arrangements described above are exactly the sort of abuse which the bankruptcy laws are designed to avoid.

It is not within the power of a creditor who joins in good faith in a petition to have his debtor adjudged a bankrupt thereafter to withdraw from such petition, and prevent the matter from proceeding, so long as any of the petitioning creditors insist that the matter do proceed. It is doubtful whether such petitioning creditor may withdraw in any event without leave of court so to do. Any other rule would leave the door open for the perpetration of fraud, and the surreptitious bargaining between the debtor and petitioning creditors in an effort to procure the withdrawal of a sufficient number of the latter to reduce the amount of claims or the number of creditors below the requirements of the statute. The court cannot inquire into the good faith of every attempted withdrawal, nor indeed is there any way to prove the secret bargainings between debtor and creditors, and the only way to prevent them is to hold such attempted withdrawals to be ineffectual so long as any of the petitioning creditors desire in good faith to prosecute their petition to an adjudication.

*In re San Jose Baking Co.,* 232 F. 200, 201 (N.D.Cal.1916). *Accord, In re Cronin,* 98 F. 584 (D.Mass.1899); *In re Bedingfield,* 96 F. 190 (N.D.Ga.1899).

The Bankruptcy Court is vested with the power to stop attempts by the debtor and its allies to buy out creditors for the purpose of reducing the number of petitioning creditors below that required by 11 U.S.C. § 303. By denying the seven original petitioners leave to withdraw, the Bankruptcy Court was clearly acting within the range of its discretion. The order of the lower court denying the motions to withdraw must be affirmed.

Having reviewed the alleged errors raised by the appellant as to whether there was a sufficient number of qualified petitioning creditors, the Court is convinced that no reversible error was committed. Therefore, the judgment of the lower court that there were three or more petitioning creditors with non-contingent claims against Bokum totalling over $5,000 is affirmed.

■ Bokum next argues that the Bankruptcy Court improperly set aside the Clerk's Entry of Default entered in the matter of Bokum's counterclaims against LILCO. LILCO did not respond to the counterclaims. Under Bankruptcy Rule 112, it was not required to do so except by order of the court. The court did not so order. The Entry of Default by the Clerk was manifest error. *See* Bankruptcy Rule 755. The Bankruptcy Court, *sua sponte,* set aside the erroneous Entry of Default. It is clearly within the power of the Bankruptcy Court to set aside erroneous actions by the Clerk. The Bankruptcy Court's action must be upheld.

■ Bokum's next argument on appeal is that the Bankruptcy Court's finding that Bokum was not generally paying its debts as they came due was in error. Bokum essentially argues that its claims against LILCO should have been resolved prior to a determination of the involuntary bankruptcy petition. Bokum urges that its claims against LILCO would have resulted in a judgment holding LILCO liable for the debts incurred by Bokum. Thus, argues Bokum, the debts were disputed and could not serve as the basis for an involuntary petition. Again, the appellant's argument lacks merit.

Bokum purports to rely on *In re Covey,* 650 F.2d 877 (7th Cir.1981), the leading case on issues involving § 303 of the new Bankruptcy Code. In *Covey,* the court undertook a detailed analysis of § 303 in determining whether disputed debts should be considered in deciding whether or not a debtor is generally paying its debts as they come due. The *Covey* court first noted that

a debtor generally should not have to pay disputed debts in order to defeat an involuntary petition. *See In re All Media Properties, Inc.,* 5 B.R. 126 (Bkrtcy.S.D.Tex. 1980). The court refused, however, to state a hard and fast rule concerning disputed debts. Instead, a well-reasoned analysis was put forth involving three separate inquiries:

(1) Whether the dispute is as to the *amount* or the *existence* of the claim;

(2) If the entire claim is disputed, whether resolution of the dispute will require substantial litigation; and

(3) If substantial litigation will be required, whether the debtor's interests outweighs the creditor's interest in prompt resolution of the involuntary petition.

650 F.2d 877, 883. Applying the *Covey* analysis to the instant case, it is clear that no error was committed by the lower court.

■ First, Bokum did not dispute the existence nor, in most instances, the amounts of the creditors' claims. Instead, Bokum urges that LILCO breached its agreements with Bokum, exercised managerial control over Bokum, and is ultimately liable for all of Bokum's debts. However, the Bankruptcy Court had previously severed all disputes between Bokum and LILCO from those involving the other creditors, and this argument was not considered by the court below. The order of severance is not reviewable on appeal until a final judgment is rendered. *See De Laney v. City Investment Co.,* 224 F.2d 808 (10th Cir. 1955). Moreover, it is clear that this action of the Bankruptcy Court was done with an eye toward the expeditious resolution of the petition. *See* Interim Bankruptcy Rule 1009. In these circumstances, there is no error in the refusal of the court below to consider as disputed the claims of the creditors other than LILCO. Indeed, Bokum fails to explain how its claim against LILCO would relieve Bokum of its obligations to the creditors. Thus, it was proper for the Bankruptcy Court to consider all of the creditors' claims in determining whether Bokum was paying its debts when due.

■ Moreover, even if the claims of the creditors can be called "disputed" claims, Bokum's argument would still fail under the second part of the *Covey* analysis. It is quite clear that substantial litigation will be necessary to resolve the dispute between Bokum and LILCO. Implicit in the Order severing the LILCO claims from the others is the belief of the lower court that the LILCO claims are far more complicated and will require more time to resolve than the others. This conclusion is not clearly erroneous and must therefore be affirmed. *In re White House Decorating Co.,* 607 F.2d 907 (10th Cir.1979). Therefore, the second aspect of the *Covey* test must be resolved against Bokum.

Since it is clear that Bokum's argument fails under the first two parts of the *Covey* analysis, the Court need not balance the interests of the debtor and creditors. Such weighing is best done by the trial court. Here the lower court found it unnecessary to conduct such a balancing, and this Court concurs in that decision. Therefore, the finding of the Bankruptcy Court that Bokum was not paying its debts when due will be affirmed.

■ Bokum next argues that the Bankruptcy Court erred by refusing to allow Bokum a jury trial on the issues involved in the § 303 proceeding. Bokum concedes that by the terms of 28 U.S.C. § 1480(b), the Bankruptcy Court can order a trial without a jury in § 303 cases. However, Bokum urges that Judge Keller abused his discretion by failing to give Bokum a jury trial on these issues.

Title 28 U.S.C. § 1480(a) gives a right to a jury trial to bankruptcy litigants in certain situations. However, subsection (b) provides that:

The bankruptcy court may order the issues arising under section 303 of title 11 to be tried without a jury.

Bokum argues that no special circumstances existed which would justify the Bankruptcy Court in denying a jury trial. However, the statute does not require the existence of any special circumstances. The matter is

plainly left to the discretion of the Bankruptcy Court. It can hardly be said that the lower court abused its discretion when its actions were clearly within the powers granted by Congress, and Bokum makes no argument that it had a constitutional right to a jury trial. The denial of Bokum's request for a trial by jury is therefore affirmed.

██ Bokum's final argument on appeal relates to a perceived conflict of interest involving counsel for the petitioners. LILCO's attorneys have thus far represented all of the petitioning creditors. This representation has at all times been with the consent of those creditors. Bokum argues that because a number of the creditors sought to withdraw from the petition while others did not, the Bankruptcy Court erred by not forcing counsel for LILCO to withdraw from representing the creditors who wished to withdraw.

The Court finds no error as to this matter for a number of reasons. First, at no point in the proceeding was any motion to disqualify raised by any party to the proceedings. Counsel for Bokum made some mention of the conflict he perceived, but never formally moved for disqualification. More significant is the fact that none of the creditors ever sought to disqualify counsel for LILCO, even though the possibility of a conflict of interest arising at some point in the proceedings was known to them. (R. XII, 37–38; R. X, 199–200.)

Nonetheless, Bokum argues that the Bankruptcy Court, in its supervisory capacity, had a duty to disqualify counsel for LILCO *sua sponte*. Even assuming that the Bankruptcy Court has a duty to disqualify counsel where there is a conflict of interest, Bokum fails to explain what conflict existed.

It is certainly true that at some point in a proceeding such as this one a conflict of interest can arise. But the point at which such conflict arises is when the creditors line up to have their claims valued and prioritized. If and when such a conflict arises, it seems likely that the individual creditors would retain separate counsel, either on their own initiative or at the suggestion of counsel for LILCO.

The fact that some of the creditors sought to withdraw does not create a conflict of interest. The Bankruptcy Court halted Mr. Biava's transparent attempt to buy out enough creditors to stop the proceedings by denying the creditors' motions to withdraw. Since none of the petitioners were allowed to withdraw, their interests in the proceedings remained identical to the interests of LILCO. Moreover, even if a conflict existed as to the creditors who sought to withdraw, there remained a number of creditors who did not seek to withdraw. As noted earlier, there were six intervening creditors with claims exceeding $13,000, none of which ever sought to withdraw. As to each of these six creditors, there are no conceivable conflicts between their interests and that of LILCO.

In short, the Court finds that no conflict of interest existed which would require the lower court to disqualify counsel for LILCO *sua sponte*. Even if the conflict perceived by Bokum is real as to some of the creditors, there is nothing in the record to suggest that these creditors have been prejudiced. Finally, there are a number of creditors as to which no conflict is even suggested, and the claims of these creditors are sufficient to justify relief under 11 U.S.C. § 303. Clearly, therefore, Bokum was not prejudiced by the refusal of the Bankruptcy Court to disqualify counsel for LILCO.

The Court having reviewed the points of error alleged by the appellant concludes that none are meritorious. Therefore, the order of the Bankruptcy Court granting relief to the petitioners under 11 U.S.C. § 303 is AFFIRMED.