875 P.2d 1104 (1994)
117 N.M. 672
STATE of New Mexico, Plaintiff-Appellee,
v.
David FERNANDEZ, Defendant-Appellant.
No. 14681.
Court of Appeals of New Mexico.
April 14, 1994.
Certiorari Denied May 26, 1994.
*1105 Tom Udall, Atty. Gen., Daniel F. Haft, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.
Anthony James Ayala, Albuquerque, for defendant-appellant.

OPINION
BLACK, Judge.
On December 4, 1991 David Fernandez (Defendant) was arrested by Taos County Police Officer David Romo and charged with driving while intoxicated (DWI), careless driving, and resisting arrest. On January 6, 1992, in his capacity as Chairman of the Taos County Commission, Defendant wrote a letter to Romo stating that he had received information indicating Romo and his wife were violating the guidelines of a federal food commodities program. Based on this letter, the New Mexico Attorney General's Office decided to add a witness intimidation count to the three pending misdemeanor charges. In addition, Defendant was facing embezzlement charges in an unrelated matter.
Following a four-day jury trial, Defendant was convicted on the two misdemeanor offenses of careless driving and resisting arrest, and on one felony count of intimidating *1106 a witness. Defendant was acquitted on the DWI charge.
Defendant raises thirteen points on appeal, but, in violation of SCRA 1986, 12-213(A)(1)(a) (Repl.1992) fails to list the legal issues in an index. Nonetheless, this Court has reviewed each of the arguments raised in Defendant's brief in chief and we address them here, combining some of Defendant's issues for purposes of our discussion. We find Defendant's arguments without merit, and we affirm.

I. JUDICIAL BIAS AND MISCONDUCT

Defendant's principal contentions on appeal revolve around the alleged judicial bias and misconduct of Judge Benjamin S. Eastburn, who presided over both Defendant's DWI trial and Defendant's embezzlement trial. In support of his allegations, Defendant cites more than fifteen instances which he claims demonstrate Judge Eastburn's bias against him. However, Defendant's claims of judicial bias or misconduct are not supported by the record.
Our Supreme Court has recognized the scope of the challenge a trial judge faces in remaining impartial:
A trial judge must exercise great care to assure a criminal defendant a fair and impartial trial. This required fairness and impartiality may often run counter to natural human reaction, particularly where the case involves a heinous crime, or the demeanor of an attorney has been particularly disrespectful or antagonistic. Nonetheless, fairness and impartiality are required of a judge and necessitate that the judge "be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom he deals in his official capacity."
State v. Martin, 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (citations omitted).
As a general rule, "`a fair and impartial tribunal requires that the trier of fact be disinterested and free from any form of bias or predisposition regarding the outcome of the case.'" Purpura v. Purpura, 115 N.M. 80, 83, 847 P.2d 314, 317 (Ct.App.) (quoting Reid v. New Mexico Bd. of Examiners in Optometry, 92 N.M. 414, 416, 589 P.2d 198, 200 (1979)), cert. denied, 115 N.M. 79, 847 P.2d 313 (1993). On the other hand it is also well settled that a party "cannot establish bias merely by pointing to the judge's failure to accept his argument." State v. Cherryhomes, 114 N.M. 495, 500, 840 P.2d 1261, 1266 (Ct.App.), cert. denied, 114 N.M. 501, 841 P.2d 549 (1992). Rather, the test for resolving a claim that a judge is biased in favor of the State "is whether the conduct of the judge deprived the defendant of a fair trial." State v. Muise, 103 N.M. 382, 389, 707 P.2d 1192, 1199 (Ct.App.), cert. denied, 103 N.M. 287, 705 P.2d 1138 (1985).
We note at the outset that, following the voluntary recusal of the two local district judges, Defendant stipulated to Judge Eastburn. While not dispositive on the issue of judicial bias, it may also be relevant that Defendant was acquitted of DWI, the charge he seemed most concerned about in his dialogue with Officer Romo. At a minimum, Defendant's acquittal on the DWI charge reveals the jury's ability to distinguish the evidence presented at trial notwithstanding any allegedly improper conduct by Judge Eastburn and is therefore inconsistent with Defendant's contention that he was denied a fair trial. For the same reason, it also is noteworthy that Defendant was acquitted of all charges in his subsequent trial in which he was represented by the same counsel and which was also presided over by Judge Eastburn.

A. Voir Dire

Defendant's first example of alleged judicial misconduct occurred during voir dire. Defendant complains that Judge Eastburn's refusal to allow defense counsel a five-minute recess to reconcile his own seating chart was an example of the type of judicial bias and misconduct which ultimately denied him a fair trial.
The record reflects, however, that defense counsel's request occurred shortly after the court had already begun to conduct its own voir dire. The record further reflects that in denying the recess, the court confirmed with defense counsel that counsel had all the *1107 names "in order" and "coded," and pointed out that counsel would have ample opportunity to organize his materials further during voir dire by the court and State.
A judge's expressed desire to expedite resolution of a matter is not generally an indication of bias against either party. In re Bokum Resources Corp., 26 B.R. 615, 621 (D.N.M.1982); cf. State v. Turner, 97 N.M. 575, 577-78, 642 P.2d 178, 180-81 (Ct.App. 1981) (denial of motions for continuance not proof of bias), cert. quashed, 98 N.M. 51, 644 P.2d 1040 (1982). The Supreme Court rejected a similar argument and held defense counsel was not entitled to continue voir dire so he could have additional time to review the supplemental jury questionnaires in State v. Gonzales, 112 N.M. 544, 549, 817 P.2d 1186, 1191 (1991). Finally, there is no evidence the court was predisposed towards refusing short recesses by the defense, since such requests were granted at other points in the trial.
Defendant also argues the district court improperly limited his voir dire. The relevant New Mexico Rule of Criminal Procedure governing juror voir dire states:
The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as [the court] deems proper, or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper.
SCRA 1986, 5-606(A) (Repl.1992) (emphasis added).
A review of the trial tapes reveals the district judge initially conducted his own examination of the jury panel, and then allowed counsel for both the Defendant and the State to conduct their own voir dire. The court's examination resulted in the dismissal for cause of a number of prospective jurors, after which defense counsel spent well over an hour in voir dire of the remaining jurors. Counsel for the defense examined the panel as a whole, as well as prospective jurors, at length. In sum, Defendant was permitted more than adequate voir dire by the court, consistent with his right to have a jury free from bias or prejudice. Cf. State v. Gonzales, 112 N.M. at 549, 817 P.2d at 1191 (voir dire of seventy-nine prospective jurors in three-hour period within discretion).
In raising this claim, Defendant appears to argue that any restriction on a party's voir dire by the court amounts to reversible error. Defendant cites no authority to support any such theory and it is inconsistent with well established New Mexico law. See, e.g., State v. Isiah, 109 N.M. 21, 25-6, 781 P.2d 293, 297-98 (1989). Moreover, Defendant has failed to assert any prejudice he may have suffered by the court's exercise of its supervision over voir dire. In the absence of prejudice, there is no reversible error. State v. Duran, 107 N.M. 603, 608, 762 P.2d 890, 895 (1988).

B. The District Court's Conduct Regarding the Scope of the State's Investigation

At trial, the State called six witnesses, none of whom were involved in the Attorney General's investigation of the case. The defense was permitted to call Art Garcia, an investigator with the Attorney General's Office who was assigned to Defendant's case. On direct examination, Garcia testified regarding his involvement in the investigation, but the defense never questioned Garcia concerning the thoroughness of the investigation.
Our review of the record suggests the court inquired into the relevance and probative value of the proffered evidence, then ruled it was admissible on cross-examination under limited circumstances. Defendant's only specific complaint is that in response to a specific question by defense counsel as to whether the Attorney General's Office had requested that Romo utilize an electronic listening device in Defendant's presence, the district court sustained an objection on the grounds of relevance and speculation. At trial, Defendant argued several theories in support of his defense that the charges were politically motivated. One of these theories involved an attempt by defense counsel to *1108 show that the prosecution's investigation was less thorough than the investigation it performed in a separate, unrelated case. Specifically, the court questioned defense counsel as to the nature of the defense which would justify calling the Attorney General and members of his staff to appear as witnesses at trial. The court stated that it did not understand "completeness of an investigation" as a legitimate defense. Judicial bias must be personal and cannot be based on adverse rulings. State v. Hernandez, 115 N.M. 6, 20, 846 P.2d 312, 326 (1993).

C. The District Court's Conduct Regarding Defense Counsel's Opening Statement

Defendant next argues that the district court made derogatory comments regarding the length of Defendant's opening statement. These comments appear to have been made outside the presence of the jury and Defendant alleges no prejudice. In the absence of prejudice, there is no reversible error. Duran, 107 N.M. at 608, 762 P.2d at 895; see also State v. Clark, 83 N.M. 484, 485, 493 P.2d 969, 970 (Ct.App.1971) (trial court's comments outside presence of the jury did not deprive defendant of a fair trial), cert. denied, 83 N.M. 473, 493 P.2d 958 (1972).

D. The District Court's Response to Defense Objections

Defendant raises numerous instances of alleged bias by the district court which all relate to the manner in which the court responded to defense objections. It appears that the court repeatedly attempted to have the parties follow a procedure whereby objections would be stated concisely and any further argument would be elicited by the court only if necessary. See SCRA 1986, 11-611(A) (a judge has authority to exercise reasonable control over trial proceedings so as to ensure ascertainment of the truth and avoid needless time consumption). Where counsel attempted to circumvent this procedure and argue the merits of the objection in front of the jury, Judge Eastburn admonished them. Judicial bias must be personal and cannot be predicated upon enforcement of the rules of criminal procedure. Hernandez, 115 N.M. at 20, 846 P.2d at 326.
Similar claims were considered in In re Bokum Resources. Addressing the argument that the bankruptcy judge showed bias by his harsh tone, Judge Burciaga said:
Suffice it to say that the transcripts show Judge Keller's statements to be free from any indication of animosity towards Bokum's counsel. If indeed the judge became angry, that anger would be understandable in light of the insistence of Bokum's counsel on pursuing meritless motions and his repeated attempts to introduce evidence to which objections had previously been sustained. "Judges, while expected to possess more than the average amount of self-restraint, are still only human. They do not possess limitless ability, once passion is aroused, to resist provocation." United States v. Weiss, 491 F.2d 460, 468 (2d Cir.), cert. denied, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974).
In re Bokum Resources, 26 B.R. at 622.
Defendant specifically claims his counsel was "screamed at by the trial judge." Defendant refers this Court to three instances in support of his claim. After listening to the pertinent portions of the trial tapes, we do not agree with Defendant's characterization of Judge Eastburn's tone. In one of the instances Defendant calls our attention to, we recognize that the judge was speaking louder than he had previously; however, the judge was not "screaming." In fact, the judge's raised tone of voice was in direct response to defense counsel's raised voice and defense counsel's continued interruption of the judge as the judge attempted to clarify a legal point with the jury.
We find no indication of bias or animosity in his tone of voice or the fact he required both sides to voice their evidentiary objections without making a jury argument. Cf. Grammer v. Kohlhaas Tank & Equip. Co., 93 N.M. 685, 693-94, 604 P.2d 823, 831-32 (Ct.App.1979) (counsel argument in front of jury under the supervision of the trial court which has wide discretion in that regard), cert. denied, 94 N.M. 628, 614 P.2d 545 (1980).

*1109 E. Evidentiary Rulings

Defendant next argues that the district judge demonstrated his partiality by his various evidentiary rulings regarding the December 6 letter and other matters. The admission or exclusion of evidence is within the discretion of the district court. See State v. Worley, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984) (evidentiary ruling of trial court will not be disturbed absent an abuse of discretion). Again, judicial bias cannot be predicated upon unfavorable evidentiary rulings. State v. Williams, 105 N.M. 214, 219, 730 P.2d 1196, 1201 (Ct.App.1986). The mere fact that a judge has consistently ruled for or against one party cannot, standing alone, provide a basis for a finding of judicial bias. In re Bokum Resources, 26 B.R. at 621.
Finally, as is customary, Judge Eastburn instructed the jury before opening statements as follows:
No statement, ruling, remark or comment that I may make during the course of the trial is intended to indicate my opinion as to how you should decide this case or to influence you in any way. At times I may ask questions of witnesses. If I do, such questions do not in any way indicate my opinion about the facts or indicate the weight that I feel you should give the testimony of any of the witnesses.... [Y]ou are the sole judges of the facts of this case, and that it's your role in this proceeding, and not mine.
At the close of the case, the court instructed the jury further that they were "the sole judges of the facts in this case," that they "alone [were] the judges of the credibility of the witnesses, and of the weight to be given to the testimony of each of them" and that they were "judges of the facts [whose] sole interest is to ascertain the truth from the evidence in the case." Given the mixed verdict in this case, it seems obvious the jury was able to consider the evidence impartially.

II. SIX-MONTH RULE

Defendant argues the district court erred by not granting his motion to dismiss the charges filed against him, based on an alleged violation of the "six-month rule." SCRA 1986, 8-506(B) (Repl.1990).
Defendant was charged by criminal complaint and arraigned in municipal court on December 5, 1991 on charges of DWI, careless driving, and resisting arrest. On January 16, 1992, the State dismissed the charges in municipal court and, that same day, filed a criminal complaint in district court charging Defendant with committing the same misdemeanor offenses charged in municipal court. On February 18, 1992, Defendant was arraigned on the charges filed in district court.
On April 20, 1992, Defendant was indicted by a grand jury for the felony offenses of embezzlement (count I), bribery or intimidation of a witness (count II), and fraudulent use of a credit card (count III). On June 19, 1992, Defendant entered a waiver of arraignment and plea of not guilty to those charges.
On August 5, 1992, the Supreme Court granted the State's petition for an extension of time pursuant to SCRA 1986, 5-604 (Repl. 1992), allowing the trial to commence through November 18, 1992. On October 26 and 27, 1992, the district court entered written orders severing the count II felony intimidation offense from counts I and III, for purposes of trial, and ordering that the three misdemeanor offenses charged in Taos County Cause No. 92-06CR be tried together with the severed felony intimidation charge in Taos County Cause No. CR 92-27. Defendant's trial in Cause No. 92-06CR, on the three misdemeanor charges and the one felony count, commenced on November 16, 1992.
Under New Mexico law, the trial of a criminal case is required to commence six months after "the date of arraignment, or waiver of arraignment, in the district court of any defendant." SCRA 5-604(B)(1). Defendant argues that, after a motions hearing held July 24, 1992, the district court erred by not dismissing the misdemeanor charges filed in Taos Municipal Court on December 5, 1991. The district court, however, did make a finding, after a hearing, that the State's refiling in district court of the misdemeanor charges originally filed in municipal court was not done to circumvent the rule, that Defendant had not been prejudiced, and that the intent of the six-month rule had not been *1110 violated. See, e.g., State ex rel. Delgado v. Stanley, 83 N.M. 626, 627, 495 P.2d 1073, 1074 (1972) (such a finding sufficient under prior rule). Moreover, Defendant raised this argument before the Supreme Court in his opposition to the State's petition for an extension of time. Indeed, the Supreme Court's extension order indicates Defendant's objection was considered. Defendant is thus precluded from now challenging the Supreme Court's ruling. See, e.g., State v. Sedillo, 86 N.M. 382, 382, 524 P.2d 998, 998 (Ct.App.) (New Mexico Supreme Court's grant of an extension is final and may not be challenged in the Court of Appeals), cert. denied, 86 N.M. 372, 524 P.2d 988, and cert. denied, 419 U.S. 1072, 1092, 95 S.Ct. 662, 42 L.Ed.2d 669 (1974).

III. THE DECEMBER 5, 1991 LETTER

Defendant contends the district court erred by admitting into evidence a letter dated December 5, 1991 written by Defendant to Romo. Defense counsel argues that this letter constitutes an offer to plea bargain and is therefore inadmissible under SCRA 1986, 5-304(F) (Repl.1992) and SCRA 1986, 11-410.
It is not clear from the face of the December 5, 1991 letter that it is intended to be an offer to plea bargain. Even if it is viewed as such, however, statements volunteered by the Defendant in contacts he initiated with authorities are beyond the protection of SCRA 11-410. State v. Anderson, 116 N.M. 599, 866 P.2d 327 (1993); see also 2 David W. Louisell & Christopher B. Mueller, Federal Evidence § 187 (rev. ed. 1985). Nor does Defendant refer to any evidence that he relied on SCRA 11-410 in initiating this contact. Anderson, 116 N.M. at 304, 866 P.2d at 332.
It is also significant that defense counsel made statements in his opening remarks to the jury that tracked Defendant's admissions in the December 5 letter. During his opening statement, defense counsel said, "Clearly [Defendant] was careless [sic] driving for not putting his signal on; because of that one hesitation, David Fernandez admits the careless driving." Counsel went on to state that "David Fernandez will tell you that when he saw the police officer that night ... he was uncooperative, and we'll agree with the prosecution on the point that he was uncooperative and therefore he was guilty of being uncooperative or as the prosecutor said resisting arrest that night...."
"Judicial discretion is abused if the action taken by the trial court is arbitrary or capricious. Such abuse of discretion will not be presumed; it must be affirmatively established.", State v. Greene, 92 N.M. 347, 349, 588 P.2d 548, 550 (1978) (citations omitted); see State v. Alberico, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993) (abuse of discretion requires the trial judge's action to be "obviously erroneous, arbitrary, or unwarranted"). We do not find an abuse of discretion in admitting the December 5 letter.

IV. SUFFICIENCY OF EVIDENCE

Defendant challenges the sufficiency of the evidence supporting his conviction for intimidating a witness, on two grounds. Defendant first argues, as he did throughout trial, that the State failed to prove that Officer Romo was actually intimidated or threatened as a result of Defendant's conduct. Second, Defendant challenges the sufficiency of the evidence underlying the charge generally.
Defendant asserts that Romo testified that he was not intimidated by Defendant's calls and letters, and that Defendant never requested Romo to testify falsely, or to not testify, with respect to the DWI charge. These evidentiary facts do not persuade us that the evidence was insufficient to support conviction for intimidation of a witness.
Under its own terms, NMSA 1978, Section 30-24-3(A)(2) (Cum.Supp.1993) does not include "actual intimidation" by a victim as an element of the offense. The State was not, then, required to prove that Romo was intimidated; it was sufficient that the prosecution established that Defendant threatened Romo. Cf. State v. Santiago Rene O., 113 N.M. 148, 149, 823 P.2d 948, 949 (Ct.App. 1991) (no basis for reading exception into statute which is plain on its face). In this sense, Section 30-24-3(A)(3) does not require proof that an accused's act is successful. See *1111 Black's Law Dictionary 1480 (6th ed. 1990) ("threat" defined as a declaration of intent "to work injury to the person, property, or rights of another, with a view of restraining such person's freedom of action"). Moreover, neither Section 30-24-3(A)(3) nor the instruction given to the jury required proof that Defendant requested any action by Romo; the operative verbs are "threatened or intimidated."
Officer Romo testified at trial that, up until the time he received Defendant's January 6 letter, he had no reason to believe he was not eligible for the food commodity program. Romo further testified that (a) he considered the letter directly related to Defendant's pending case; (b) it was not Defendant's job as Taos County Commissioner to monitor the food program; and (c) at the time he received the letter he was still the arresting and prosecuting officer and planned to testify against Defendant. There is sufficient evidence that Defendant "threatened or intimidated" Officer Romo. See State v. Garcia, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (sufficiency of the evidence requires substantial evidence such that a rational jury could have found each element of the crime to be established beyond a reasonable doubt).

V. MOTION FOR NEW TRIAL

A. Preservation

The procedure for filing a motion for a new trial is set forth under SCRA 1986, 5-614 (Repl.1992). Under that rule, a motion for new trial based on grounds other than newly discovered evidence "shall be made within ten (10) days after verdict or finding of guilty or within such further time as the court may fix during the ten (10) day period." SCRA 5-614(C). Defendant was found guilty of the charges on November 19, 1992. Defendant's claim of inconsistent verdicts was first raised in an "Amended Motion For A New Trial" filed in district court on December 28, 1992. Defendant fails to assert, and the record does not indicate, that the district court extended the ten-day time limit for filing a motion for new trial as set forth in SCRA 5-614(C). See § 12-213(A)(3) (requiring that contentions of an appellant must indicate how an issue has been preserved in the court below). It does not appear therefore that Defendant properly preserved this issue for review.

B. Merits

Even if we consider Defendant's argument, it lacks merit. Defendant argues the jury's guilty verdict on the intimidation count and not guilty verdict on the DWI charge "are inconsistent, indicating jury confusion." The jury was instructed that the elements for the offenses of DWI and intimidation of a witness are separate and distinct under New Mexico law. Inconsistent verdicts are those which are so contrary to each other that the basis upon which each verdict was reached cannot be determined. Maxwell v. Santa Fe Pub. Sch., 87 N.M. 383, 387, 534 P.2d 307, 311 (Ct.App.1975) (Sutin, J., specially concurring). We perceive no such problem here.
In order to establish that Defendant intimidated Romo, the State merely had to prove that the purpose of the threat or intimidation was to prevent Romo from testifying was adequate. Furthermore, even if the acquittal on the DWI charge was irreconcilable with the conviction for intimidating a witness, we would not be required to set aside the conviction; we review the verdict of conviction, not the verdict of acquittal. See State v. Leyba, 80 N.M. 190, 195, 453 P.2d 211, 216 (Ct.App.), cert. denied, 80 N.M. 198, 453 P.2d 219 (1969). As we pointed out, there is ample evidence to support that conviction.

VI. THE JURY WAS PROPERLY INSTRUCTED

The instruction on the intimidation offense presented to the jury reads as follows:
For you to find the defendant guilty of intimidation of a witness, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. David Fernandez threatened or intimidated David Romo.
2. At the time of the threat or intimidation, David Romo was a witness, or a *1112 person likely to become a witness, in a judicial or administrative proceeding.
3. The purpose of the threat or intimidation was to prevent David Romo from testifying to any fact, or to abstain from testifying.
4. This happened in New Mexico between December 4, 1991 and January 7, 1992.
The record further indicates that the court also gave Uniform Jury Instruction 14-141, the required instruction on general criminal intent.
The instruction given to the jury concerning intimidation of a witness states, "The purpose of the threat or intimidation was to prevent David Romo from testifying to any fact, or to abstain from testifying." We believe this language conveyed the notion that the State had to prove Defendant intended that Romo not testify to some fact or that Romo not testify at all. Webster's Third New International Dictionary 1847 (1966) ("purpose" defined as an intended object, effect, or result). Moreover, the instruction tracks the language of Section 30-24-3(A)(3). See State v. Cawley, 110 N.M. 705, 710, 799 P.2d 574, 579 (1990) ("Generally, an instruction that parallels the language of the statute and contains all essential elements of the crime is sufficient.").
Defendant tendered Proposed Jury Instruction No. "C" which the court refused. Defendant's proposed instruction "C" read as follows: "In order to find the [D]efendant guilty of the offense of intimidation of a witness, you must find that [D]efendant had the specific intent to intimidate a witness when he authored the letter of January 6, 1992 to Officer David Romo." Defendant was not entitled to his tendered instruction because the jury was adequately instructed on the requisite intent by the instructions given. See State v. Griscom, 101 N.M. 377, 379, 683 P.2d 59, 61 (Ct.App.), cert. denied, 101 N.M. 362, 683 P.2d 44 (1984).

VII. OFFER OF PROOF

Defendant contends "[t]he trial court improperly refused to allow the [d]efense to make a tender of proof through Officer David Romo." (Emphasis omitted.) Although it is not entirely clear, Defendant's claim apparently refers to the defense theory concerning the scope of the Attorney General's Office investigation which was previously raised in the context of Defendant's allegations of judicial bias. An offer of proof stated in mere conclusory terms is too general and should be rejected. State ex rel. Nichols v. Safeco Ins. Co. of Am., 100 N.M. 440, 444, 671 P.2d 1151, 1155 (Ct.App.), cert. denied, 100 N.M. 327, 670 P.2d 581 (1983); see also SCRA 1986, 11-103.
Defendant further claims the trial court stated it would allow an offer of proof from Officer Romo "when the State called Officer Romo as a rebuttal witness." The State, of course, had no duty to call Officer Romo as a rebuttal witness and did not do so. It is unclear why Defendant apparently did not make the offer of proof during its cross-examination of Romo. It is also unclear how Taos Police Officer Romo's proffered testimony regarding an investigation by the Attorney General's Office, a separate law enforcement agency, could have been crucial to Defendant's "scope of the investigation defense." It is not error to reject an offer of proof where the party making the tender does not clearly identify the relevance of the evidence. De La O v. Bimbo's Restaurant, Inc., 89 N.M. 800, 803-04, 558 P.2d 69, 72-73 (Ct.App.), cert. denied, 90 N.M. 7, 558 P.2d 619 (1976). We see no error in the rejection of an offer of proof regarding what Romo knew about how the Attorney General's Office investigated this case in comparison with other claims.

VIII. PROSECUTOR'S COMMENT

Defendant cites as "[p]erhaps one of the single most egregious errors in the trial" a comment by the prosecutor regarding the Defendant's decision not to testify. A review of the relevant portion of the record reflects that this comment by the trial prosecutor was likely inadvertent.
After the defense had called several witnesses, the district court asked defense counsel, in open court, who else the defense intended to call. Defense counsel responded, "I intend to call Mr. David Fernandez [and *1113 others]." This dialogue was immediately followed by the court granting a requested recess to defense counsel to confer with his client. At this point, the jury was excused and counsel and the court discussed the use of defense counsel's flip-charts during closing argument. After the jury re-entered the courtroom, defense counsel announced to the court that the defense rested its case. The trial tape then reflects the court expressed surprise, and asked the prosecutor whether there would be any rebuttal by the State. After a pause, the prosecutor responded that he was "not in a position to rebut until tomorrow morning, your Honor. I expected, we all expected, the defendant to testify...." Defendant never entered an objection to the prosecutor's statement, even though the court immediately instructed the jury that "this defendant has a right not to testify."
Defendant's failure to object to the prosecutor's comment means that any error must be "fundamental" to warrant reversal. See State v. Osborne, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991); State v. Urban, 86 N.M. 351, 354, 524 P.2d 523, 526 (Ct.App.1974). In light of previous statements by defense counsel that Defendant would testify and the district court's instruction, any error was harmless. See Clark v. State, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (similar statement by prosecutor was harmless error which did not require reversal).

IX. CUMULATIVE ERROR

Since we find Defendant's other arguments to be without merit and the record to reflect no reversible error, we are also unpersuaded by the claim of cumulative error. See Martin, 101 N.M. at 601, 686 P.2d at 943 (cumulative error doctrine to be strictly applied and cannot be invoked if no irregularities occurred or if record as a whole demonstrates defendant received a fair trial).
The judgment of the district court is therefore affirmed.
IT IS SO ORDERED.
DONNELLY and ALARID, JJ., concur.