UNITED STATES of America, Plaintiff-Appellee,

v.

David Ray KEITH, Defendant-Appellant.

No. 84–3753.

United States Court of Appeals, Fifth Circuit.

June 17, 1985.

Kerry P. Cuccia, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Thomas Watson, Harry W. McSherry, Asst. U.S. Attys., for plaintiff-appellee.

hypotheticals were clearly streamlined for the sole purpose of clarifying by illustration the issue of aggravation.

Before GEE, TATE, and HIGGIN-BOTHAM, Circuit Judges.

TATE, Circuit Judge:

The defendant Keith appeals his conviction on three counts of manufacturing, distributing, and possessing with intent to distribute methaqualone, a Schedule II controlled substance. 21 U.S.C. § 841(a)(1). His primary contention on appeal is that his admissions to Drug Enforcement Administration (DEA) agents and his admissions before the grand jury were inadmissible at trial as statements made in the course of plea discussions. Fed.R.Crim.P. 11(e)(6); Fed.R.Evid. 410(4). Finding no merit to this claim nor to any other claim made by Keith,[1] we affirm his conviction.

I.

On the mornings of March 27 and 29, 1984, Keith met with DEA agent Dodge in the DEA offices in New Orleans to discuss Keith's involvement in drug manufacturing and drug trafficking. The record indicates that the DEA initiated these meetings. When Keith arrived on both occasions, he was advised of his *Miranda* rights and signed a rights and waiver form. Keith cooperated fully with the DEA and admitted his involvement in the manufacture of phenylacetone and methaqualone, both Schedule II controlled substances. 21 U.S.C. § 841(a)(1).

Keith's lawyer was with him at the second or March 29 conference, and on her advice Keith was fully cooperative. The initial conference of March 27 was primarily with regard to Keith's involvement in *phenylacetone* manufacture and distribution; the March 29 conference, which Keith's lawyer attended, had been scheduled to develop more information on this subject. Prior to attending this second or March 29 conference, Keith had asked his lawyer whether he should furnish information about his *methaqualone* activities (the offenses involved in the present appeal), about which the DEA agents apparently then knew nothing. She had advised him to cooperate, if the government agents brought up the subject. And, indeed, towards the conclusion of the March 29 conference, the DEA agents informed Keith that his cooperation would require him to tell the whole truth about any other type of criminal involvement, because if he failed to tell anything and this was discovered, his withholding of information would have an effect upon any plea bargaining to be conducted by the United States Attorney's Office. In response, Keith informed the government about his methaqualone activities, previously unknown by the government.

On the afternoon of the same day (March 29), 1984, Keith appeared before a grand jury. Before he testified, he was told that he had the right to remain silent, that if he chose to talk he must tell the truth, and that any admissions could later be used in proceedings against him. He was also informed of his right to ask for a recess to seek the advice of his attorney outside the grand jury room before answering any question, and he stated that he understood this; and, in fact, his attorney was available for him immediately outside the jury room during his testimony. In response to questioning before the grand jury, Keith fully admitted under oath his activities with phenylacetone and methaqualone.

---

1. Keith also contends (1) that the indictment against him should have been dismissed under the doctrine of "equitable immunity"—*but see United States v. Donahey*, 529 F.2d 831 (5th Cir.1976) (rejecting a similar contention under similar facts); (2) that the indictment should have been dismissed owing to prosecutorial vindictiveness; (3) that the evidence was insufficient to support a conviction; (4) that a drug recipe book should not have been admitted into evidence at trial; (5) that agent Dodge should not have been qualified as an expert witness as to methaqualone manufacture and street-value; and (6) that the district court should have granted his motion for a mistrial. The contentions need no discussion, for they lack arguable merit.

On appeal, Keith contends (and at one point so testified, in the motion-to-suppress hearing) that, in return for his admittedly full cooperation, the DEA agent promised that Keith would not be prosecuted for any drug-related activity. However, Keith also later admitted at the suppression hearing that the DEA agent had represented only that he could recommend leniency. The DEA agent testified that the only promise made to Keith was that his cooperation would be made known to the United States Attorney for its favorable effect on "any type of plea bargaining agreement that he [Keith] would agree to with the United States Attorney's Office." Corroborative of the DEA agent's statement, is the testimony of Keith's own attorney, present at the discussion, that the agent only promised that, in return for Keith's cooperation, the agent would strongly *"recommend"* to the judge that Keith not be prosecuted for the offenses discussed at the conference. The record evidence is thus silent of any inference of misrepresentation by the DEA agents that they were authorized to make a binding plea bargain in return for Keith's cooperation.

Several days later, Keith entered into a plea agreement with the United States attorney to plead guilty to *one* count involving phenylacetone. He subsequently withdrew from this agreement at his arraignment. He was then charged in a superseding indictment with *eleven* counts relating to *phenylacetone* and three counts relating to *methaqualone.* The methaqualone offenses were severed and tried to a jury, which resulted in the convictions now on appeal. (Following sentencing, on motion of the government all of the phenylacetone counts were dismissed.)

## II.

At the jury trial, the government introduced Keith's methaqualone-related incriminating statements to the DEA agents, and a grand jury transcript of his methaqualone sworn admissions. The district court had earlier denied Keith's motions to sup-press these statements and held that they were admissible.

The basis of Keith's objections to their admissibility was Fed.R.Evid. 410(4) (which provides that "any statement made in the course of plea discussions *with an attorney for the prosecuting authority* " (emphasis added) are inadmissible) and Fed.R. Crim.P. 11(e)(6)(D), which provides:

> [E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussion:
>
> .　　.　　.　　.　　.
>
> (D) Any statement made in the course of plea discussions *with an attorney for the government* which do not result in a plea of guilt or which result in a plea of guilty later withdrawn. [Emphasis added.]

Prior to its revision in 1979, Rule 11(e)(6) had simply provided for inadmissibility "of statements made in connection with, or relevant to," plea bargains or offers thereof. As the Advisory Committee Notes to the 1979 revision of Rule 11(e)(6) make plain, the purpose of this revision was to describe more precisely that by its terms the Rule was intended only to make inadmissible plea negotiations with an *attorney* for the government and to overrule legislatively decisions such as *United States v. Herman,* 544 F.2d 791 (5th Cir.1977). The *Herman* case specifically referred to in the notes, held to be inadmissible an accused's negotiations with law enforcement officers in an effort to secure concessions from the government in return for a guilty plea.

The rule, as amended in 1979, thus makes clear that the sort of plea bargain discussions that are inadmissible under it are only those had with a government attorney. Discussions with a law enforcement agency in the spirit of cooperation and with hope for leniency, are not inadmissible under 11(e)(6)(D). *See, e.g., United States v. Jimenez-Diaz,* 659 F.2d 562, 568 (5th Cir.1981).

Thus, the plea negotiations in question, made to the DEA agents and not to a prosecuting attorney, are not within the intended inadmissibility provided by Fed.R. Crim.P. 11(e)(6)(D) or Fed.R.Evid. 410(4). Nor do the circumstances above recounted fall within any exceptional situation that might make plea negotiations ·with other than an attorney inadmissible, where due for instance to governmental misrepresentations, the accused "exhibited an actual subjective expectation to ·negotiate a plea at the time of the discussion" *and* the "expectation was reasonable, given the totality of objective circumstances." *United· States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); *United States v. Posey,* 611 F.2d 1389, 1390 (5th Cir.1980).

### Conclusion

The district court therefore did not err in finding to be admissible Keith's incriminating admissions to the DEA agents and before the grand jury. Accordingly, we AFFIRM Keith's convictions.

AFFIRMED.

Alvin B. Rubin, Circuit Judge, filed opinion concurring in result and dissenting in part.