866 P.2d 327

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Charles Elijah ANDERSON,**
**Defendant–Appellant.**

**No. 20157.**

Supreme Court of New Mexico.

Dec. 7, 1993.

Sue Anne Herrmann, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Joel Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RANSOM, Chief Justice.

Charles Elijah Anderson appeals his convictions for the robbery and murder of Demecio Ulibarri. The major issue to be decided is whether SCRA 1986, 11–410 (rule of evidence regarding inadmissibility of offer to plead and statements made in connection with such offer) ("Rule 410") makes inadmissible Anderson's statement to a Texas law enforcement officer that he would confess to the New Mexico murder in exchange for the dropping of Texas burglary charges. Finding that the statement was not made in reliance on Rule 410, as a result of inducement by the state, nor during formal plea negotiations, we affirm.

*Facts.* Between October 12 and 18, 1989, Anderson, his girlfriend Melinda Sosa, and Helen Robinson stayed at a Santa Fe motel about two-tenths of a mile from the gas station where the crimes were committed. The Salvation Army paid for the motel room the 12th and 13th, but Anderson paid cash on the 14th and 15th and worked in exchange for the room the 16th and 17th. None of the three had any money on the morning of the 14th. On the afternoon of the 14th, Anderson returned to the motel room visibly upset, with blood on his clothing and body, and told Sosa that he had messed up. Anderson had purchased liquor and cigarettes and gave Sosa some money.

After leaving Santa Fe, Anderson went to Texas, where six months later he and Sosa were arrested and charged with commercial and residential burglary. Shortly before this arrest, Anderson had told Sosa that in October he had "choked a kid to death" in Santa Fe. Sosa told the Texas police about Anderson's confession to her. The Texas officials notified Santa Fe authorities of Sosa's claim.

While in custody on the Texas charges, Anderson agreed to talk to Santa Fe detectives about the murder. After receiving <u>Miranda</u> warnings, Anderson signed a card stating that he waived his <u>Miranda</u> rights. He later made several implicatory statements to the Santa Fe detectives, including a statement that he had been at the murder scene

when Ulibarri was killed by a third person whom he knew. After having been told that Sosa had incriminated him, and during a break in questioning about the New Mexico crimes, Anderson said to Texas Officer Olson, who was guarding him, "I'd like to make a deal." Officer Olson replied, "What?" Anderson then stated, "I'll give you a confession if we can work something out." Officer Olson testified that Anderson proposed that he would confess to the Santa Fe murder if the Texas charges were dropped and the agreement was in writing.

*Relevant statements are made inadmissible by Rule 410 only when defendant has relied upon the rule or upon inducement by the state in breaking his silence.* Though at trial Anderson did not specify Rule 410 in his objection to the admission into evidence of his statements to Officer Olson, the trial court's comments indicate that it was adequately apprised of the application of the rule. *See Albertson v. State,* 89 N.M. 499, 501, 554 P.2d 661, 663 (1976) (no waiver by failure to raise specific objection when court alerted to the impropriety of questioning). Rule 410 states: [1]

> Evidence of a plea of guilty, later withdrawn, ... or of an offer to plead guilty ... to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

This Court has interpreted Rule 410 only once, in *State v. Trujillo,* 93 N.M. 724, 605 P.2d 232 (1980). In that case, in dictum, we stated:

> For purposes of clarification, we wish to distinguish between the plea negotiation process and custodial police interrogations. As to the admissibility of statements made during each, Rule 410 applies to the former and established standards of voluntariness and relevancy apply to the latter.

*Id.,* 93 N.M. at 727, 605 P.2d at 235. In *Trujillo,* the prosecution sought to admit for impeachment purposes a statement related to a failed plea agreement. It was not necessary for this Court to analyze what constitutes the negotiation process, who must be present, or whether formal charges must exist.

The New Mexico rule is based upon the original Federal Rule of Criminal Procedure 11(e)(6). The federal rule was amended in 1979 to clarify that it excluded only statements made in the course of plea discussions with an attorney representing the government. There is federal case law interpreting both the original and amended rules. Both Anderson and the State argue that federal case law should be followed by this Court. Anderson urges adoption of the analysis developed before the amendment of the corresponding federal rule; the State urges adoption of analysis developed after the clarifying amendment.

*—Interpretation urged by defendant.* Anderson urges this Court to use the federal common-law two-tier analysis to determine whether a defendant's statement is considered a plea negotiation: First, the court determines "whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion," and, second, the court determines whether the accused's expectation that he was actually engaged in plea negotiations "was reasonable given the totality of the objective circumstances." *United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); *United States v. Pantohan,* 602 F.2d 855, 857 (9th Cir.1979). Several states have adopted this analysis since the amendment. *See, e.g., People v. Rolih,* 233 Ill.App.3d 484, 174 Ill. Dec. 648, 651, 599 N.E.2d 194, 197 (1992), *appeal denied,* 148 Ill.2d 650, 183 Ill.Dec. 28, 610 N.E.2d 1272 (1993); *People v. Oliver,* 111 Mich.App. 734, 314 N.W.2d 740, 751 (1981), *disapproved on other grounds by People v. Williams,* 422 Mich. 381, 373 N.W.2d 567, 572 (1985).

Anderson argues that both tiers of the *Robertson* test are satisfied, but the State counters that, should this Court decide to follow the two-tier analysis, Anderson did not manifest a subjective expectation that he was

---

1. Rule 410 is mirrored by Rule 5–304(F) of the rules of criminal procedure for district courts.

*See* SCRA 1986, 5–304(F) (Repl.Pamp.1992) (inadmissibility of plea discussions).

engaged in negotiations because his statement was not an offer to plead guilty; and, even if he did manifest a subjective expectation, it could not have been reasonable because no one was present with authority to plea bargain.

*—Interpretation urged by the State.* The State argues that New Mexico courts should follow the amended federal rule of excluding statements only if they are made after a defendant has been charged, during formal plea negotiations when an attorney for the state or the attorney's agent is present, and when the defendant reasonably understands that he is engaging in the bargaining process. *See* Fed.R.Crim.P. 11(e)(6)(D) (rule amended in 1979 to clarify that it covered only statements made in course of plea discussions *with an attorney for the government* ); Fed.R.Crim.P. 11(e)(6) advisory committee's note (stating that 1979 amendment manifests intention to move away from earlier federal decisions suggesting that Rule 11 could be applied to police custody situations; statements made in those situations should be covered by body of law dealing with police interrogations); *see also United States v. Penta,* 898 F.2d 815, 818 (1st Cir.) (holding that statements are not plea discussions when made by unindicted defendant to U.S. attorney and investigator, when attorney was openly trying to build case against defendant's associates and defendant feared he also would be indicted; holding 'plea discussions' not to include anything outside actual plea discussions), *cert. denied,* 498 U.S. 896, 111 S.Ct. 246, 112 L.Ed.2d 205 (1990); *cf. United States v. Grant,* 622 F.2d 308, 313 (8th Cir.1980) (holding that rule excludes statements made to agent for U.S. attorney where the agent informed defendant he was authorized to make offer).

The State also urges that we follow Colorado's lead and hold that the New Mexico rule is equivalent to the federal rule after the federal amendment. The Colorado rule, which (like the rule in New Mexico) is based on the original federal rule, has been interpreted to apply only to discussions involving an attorney for the state. One Colorado court has stated:

The policy which precludes admission of communications made during plea bargaining necessarily restricts plea bargaining to those negotiations involving a prosecuting attorney with authority to bind the government in a courtroom settlement.... [Otherwise], virtually any inculpatory statement by a suspect to police could be viewed as an effort to obtain leniency and, thus, a form of "plea bargaining" inadmissible in the prosecution's case in chief.

*People v. Rollins,* 759 P.2d 816, 818 (Colo.Ct. App.1988), *cert. denied.*

The State further argues that Anderson's statement was not a plea, but an offer to confess that is not subject to the protection of the rule. At least one federal court has held that an offer to confess is not a plea negotiation, even if bargained for. *See Robertson,* 582 F.2d 1356, 1369. In *Robertson,* the court found that there had been a "confession bargain" but affirmed the conviction because the defendant only offered to make incriminating statements and did not indicate any desire to plead guilty. *See also United States v. Sikora,* 635 F.2d 1175, 1175–76 (6th Cir.) (holding no violation of Rule 11 when defendant has not tendered plea, proposal for plea, or proposal to negotiate), *cert. denied,* 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980). The State urges that this Court make a distinction between offering to confess and offering to plead guilty because confessions have their own test of admissibility and because the result of confessing to a crime is not the same as pleading guilty to a crime.

■ *—Reliance, natural and irrebuttable presumptions.* As we said in *Trujillo,* the purpose of Rule 410 is to encourage negotiations between the defendant and the state. 93 N.M. 724, 727, 605 P.2d 232, 235. In order to make a deal, a defendant certainly is more likely to forego the right to silence once he becomes aware of the protection of the rule. Awareness would be expected to result from explanation either by his counsel or the state's attorney, but whether the defendant relies on the rule depends on the facts of any given case. It is our view that the determinative factor in excluding statements pursuant to the rule is whether it may be naturally

inferred that the defendant relied on the rule in deciding to break silence, because the rule encourages cooperation only if the defendant relied on it.

By "reliance on the rule" we do not mean necessarily some identification with, or understanding of, the rule as written, but rather reliance on a subjective belief in the substance of the rule: offers to plead and related statements are inadmissible and cannot be used against the declarant. The dissent to this opinion makes the point that "reliance" rationale is unprecedented and unsupported by authorities cited in this opinion. Yet, this Court and others have said that the purpose of the rule is to encourage negotiations and, in fairness to the defendant, to make inadmissable an offer to plead. We do not believe it is unprecedented rationale to state that "encouragement" connotes a subjective sense of confidentiality or that "fairness" connotes an absence of reliance or inducement that might otherwise call into question the voluntariness of an inculpatory statement. We simply are analyzing the meaning of "encouragement" in the context of an offer to plead. The privilege to participate in open and uninhibited discussions in a lawyer-client or a psychotherapist-patient relationship, as discussed in the dissent, is founded on the reasonable expectations of the client or patient and on a policy that recognizes merit to society in the advancement of candor, trust, and productivity in those relationships. To the contrary, once a suspect has been taken into custody and warned that any statement may be used in court, that person has no reasonable expectations of confidentiality. The interest of society and law enforcement is then limited only by the individual constitutional rights of the accused and the fair application of a rule that in fact has encouraged offers to plead.

Further, to assure "fairness", when a suspect is *induced* by the state to engage in plea negotiations, as in formal plea negotiations with a state attorney (or an agent of the attorney), there will be an irrebuttable presumption that such person has relied on the rule in breaking his silence, and all statements made during the course of "making a deal" are inadmissible in future proceedings,

whether the statements are offers to confess or offers to plead guilty, and regardless of whether the declarant has been formally charged with a crime. The court may be guided by the established standards of voluntariness in finding inducement by the state.

Therefore, absent a finding by the court that statements were made with the belief they could not be "held against" the declarant, if a defendant or suspect makes uninduced statements after receiving <u>Miranda</u> warnings (i.e., being told that any statement made may be used against such person in court), there is no reason to presume that such person was motivated to make inculpatory statements in reliance on some rule of inadmissibility. In succeeding paragraphs we consider the validity of this holding in the light of authorities relied on by Anderson.

■ Anderson relies heavily on *United States v. Herman,* 544 F.2d 791 (5th Cir. 1977). *Herman,* however, has been overturned legislatively by the 1979 amendment to Rule 410, *see United States v. Keith,* 764 F.2d 263, 265 (5th Cir.1985), and is no longer relied on by the Fifth Circuit. After having been advised of his right to remain silent, Herman initiated a conversation with a postal inspector who accompanied him to a hearing. In the conversation, with no inducement by the inspector, Herman offered to plead guilty to robbery if murder charges were dropped and stated he would not disclose where the murder weapon was located until he talked to an attorney. The court affirmed the district court's order suppressing defendant's statement. *Herman,* 544 F.2d at 794. Although, in our opinion, the *Herman* court did not properly apply the rule to the facts of the case and obtained the wrong result, we believe the *Herman* principles are good law. The opinion supports our view that, before statements made by a defendant will be excluded, the defendant must either know that the statements will be protected or detrimentally rely on inducement or promises made by the state. The *Herman* court wrote:

> The accused in the pretrial bargaining should be encouraged *by knowledge* that the discussions will have a sanctity.... Having embarked on the road that permits plea bargaining, the government should be

most careful lest it be accused of bad faith in throwing open to the trial matters that *the accused thought* were not to be used against him or her. . . . To allow *the government to induce statements uttered in reliance on the rule* would be to use the rule as a sword rather than a shield.

544 F.2d at 797 (emphasis added). In *Herman,* as in this case, none of the above conditions existed.

We disapprove of the results in *United States v. Brooks,* 536 F.2d 1137 (6th Cir. 1976), *superseded by statute as stated in United States v. Sebetich,* 776 F.2d 412 (3d Cir.1985), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988), and *People v. Friedman,* 79 Ill.2d 341, 38 Ill.Dec. 141, 403 N.E.2d 229 (1980) (applying the corresponding Illinois rule). As the foundation of their holdings, both cases cite *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and cases relying on that opinion. *See Brooks,* 536 F.2d at 1139; *Friedman,* 38 Ill.Dec. at 147, 403 N.E.2d at 235. Neither court recognized the significant factual distinctions between *Santobello* and the cases before them. The defendant in *Santobello* had entered a guilty plea that the state sought to introduce in a later trial after the plea was withdrawn. There, the defendant and the attorney general had engaged in formal plea negotiations, leading to a plea that was eventually abandoned. *Santobello,* 404 U.S. at 258, 92 S.Ct. at 497. In *Brooks,* by contrast, the accused voluntarily called a postal inspector and offered to plead guilty if given a maximum sentence of two years. 536 F.2d at 1138. The *Brooks* court did not discuss whether the defendant relied on the protection of Rule 410 or whether the prosecution induced the defendant into making the contested statements and held that statements in the nature of plea bargains or attempts to open plea bargaining are inadmissible. *Id.* at 1139. In *Friedman,* the court used the *Robertson* analysis and determined that the accused's unsolicited offer to enter into negotiations was not admissible because it was a plea-related discussion. 38 Ill.Dec. at 147, 403 N.E.2d at 235. That court also did not discuss reliance or inducement when determining that statements made in plea-related discussions evincing a defendant's willingness to enter a plea in return for concessions are inadmissible. *Id.*

*United States v. Smith,* 525 F.2d 1017 (10th Cir.1975), also relied on by Anderson, is distinguishable from the facts of this case. There, the defendant's statements were made during an interview that was set up explicitly to give the defendant an opportunity to plea bargain. The defendant previously had refused to talk to officers about the crime, relenting only when all involved understood that plea bargaining was the goal of the interview. The statements were held inadmissible, and the conviction was reversed and remanded on this issue. *Id.* at 1022.

The other cases relied on by Anderson are distinguishable in various ways. *See Dawson v. State,* 585 So.2d 443, 444 (Fla.Dist.Ct.App. 1991) (offer to plea made during formal plea negotiations); *Clark v. State,* 452 So.2d 1002, 1004 (Fla.Dist.Ct.App.1984) (defendant questioned under oath by state's attorney at a change of plea hearing); *Landrum v. State,* 430 So.2d 549, 550 (Fla.Dist.Ct.App.1983) (contested statements made in connection with a previously tendered plea of guilty that was withdrawn); *State v. Fox,* 70 Haw. 46, 760 P.2d 670 (1988) (statements made by defense counsel to prosecutor regarding defendant's rejection of plea agreement); *People v. Hill,* 78 Ill.2d 465, 36 Ill.Dec. 676, 401 N.E.2d 517 (1980) (defendant gave statement to deputy who said he had authority to negotiate a plea bargain); *People v. Oliver,* 111 Mich.App. 734, 314 N.W.2d 740 (1981) (officer characterized conversation as plea bargain negotiations, induced defendant to talk with the promise that he always tried to help cooperative people); *People v. Smith,* 94 Misc.2d 384, 404 N.Y.S.2d 947 (Sup.Ct.1978) (previously-tendered plea of guilty withdrawn).

*Application of rule to facts of this case.* Anderson did not make his offer to confess during formal plea negotiations or as a result of other inducement by the officers. There is no evidence from which to infer Anderson was aware of a rule of inadmissibility of offers to plead or confess. The court found that his offer to make a deal was made voluntarily and after he had been given his

*Miranda* warnings. He made many other statements to officers that were even more damaging to his defense without claiming that any of them were made in reliance on their inadmissibility. The trial court did not err in admitting Officer Olson's testimony.

*Disposition of other claims of error. —It was not reversible error to refuse to instruct on larceny.* Anderson next claims that because there was sufficient evidence to support an instruction on larceny, it was reversible error to fail to so instruct. He argues, in effect, that if the jury had determined that Anderson did not commit the murder but did take the money, that Anderson should only have been convicted of larceny and not robbery. It is possible, under Anderson's theory, that the jury could have had a reasonable doubt regarding whether Anderson murdered the victim and yet believed that Anderson took the money from the unattended register after the murder.

■ For a defendant to be entitled to an instruction for a lesser included offense "there must be evidence tending to establish the lesser offense" and "there must be some view of the evidence which could sustain a finding that the lesser offense was the highest degree of the crime committed." *State v. Escamilla,* 107 N.M. 510, 512, 760 P.2d 1276, 1278 (1988) (quoting *State v. Hernandez,* 104 N.M. 268, 276, 720 P.2d 303, 311 (Ct.App.), *cert. denied,* 104 N.M. 201, 718 P.2d 1349 (1986)). In this case, there is evidence that Anderson did more than just take the money—for example, his confession to Sosa was that he had killed a kid, not that he had stolen money from a gas station; the attempt to make a deal concerned his willingness to confess to the murder, not to confess to larceny; there was no evidence that he had been at the crime scene only after the murder. The only evidence which Anderson argues would support the larceny instruction is that the murder took place between 1:00 p.m. and 3:00 p.m. and that police did not secure the scene until after 4:39 p.m. However, the possibility that larceny could have occurred during that time period is not evidence that it did.

In any event, failure to give a lesser included offense instruction is not necessarily reversible error. *Id.* In *Escamilla,* even though an aggravated battery instruction *could* have been supported by the evidence (the defendant there claimed that his highest degree of intent was only to injure the victim), the failure to instruct was harmless error because the jury found that the defendant had a deliberate intent to take the life of the victim (which supported the conviction of attempted first-degree murder), not that he simply had knowledge that his acts created a strong probability of great bodily harm (intent required for lesser included offense of attempted second-degree murder). Because attempted second-degree murder was a higher offense than aggravated battery and the jury found a level of intent commensurate with an even greater offense, it was harmless error to refuse to instruct on the lesser included offense.

To apply the *Escamilla* reasoning to this set of facts, the jury here found that Anderson committed the murder. Any taking of money related to the murder constituted robbery. Therefore, the jury found that the elements required for a robbery conviction were met and it was harmless error to refuse to instruct on larceny. Only if the jury had acquitted Anderson of murder and convicted him of robbery could it have been reversible error to fail to give a larceny charge.

■ *—Not reversible error to admit census data.* There was forensic evidence that the murder had been committed by an African–American. Anderson claims that the court erred in admitting into evidence a census report showing that the population of African–Americans in Santa Fe is only .6% of the general population. The State argues that the relevance of the data was that because the African–American population of Santa Fe is so low, it was less likely that the murder victim came in contact with an African–American other than Anderson on the day of his murder. We can see some marginal relevance, and because Anderson has not shown the report to be more prejudicial than probative, admission of the data was not an abuse of the court's discretion. *See State v. Chamberlain,* 112 N.M. 723, 726, 819 P.2d 673, 676 (1991) (holding trial court is vested

with great discretion in applying Rule 403 and will not be reversed absent an abuse of that discretion).

■ —*There is sufficient evidence to support the verdict.* Anderson's final claim is that there was insufficient evidence to support the verdict of robbery, arguing that the only evidence to link Anderson to the robbery was that he had money on the afternoon of the crime. Anderson argues that the State did not provide evidence that he did not have money earlier in the day. We do not understand this contention. Detective Trujillo testified that Anderson himself told him he had no money the morning of the robbery and murder. Robinson testified that she assumed Anderson had no money earlier in the day because they were out of cigarettes. Sosa testified that she didn't know if Anderson had money the morning before the crime, but that none of them worked during the week they were in Santa Fe. The hotel manager testified that the Salvation Army paid for Anderson's first two nights at the motel and Anderson paid for two days with cash after the crime and worked in return for rent for two other days. There was testimony that Anderson immediately bought liquor shortly after the crime was committed, even though he had purchased none while at a liquor store earlier in the afternoon. The jury could have determined from the above evidence that Anderson had no money before the time of the crime. The State provided evidence of all other elements of both crimes, even though, apart from Anderson's alleged confession to Sosa and his offer to confess, it was all circumstantial. We "must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, the verdict was supported by sufficient evidence.

We affirm the convictions.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.

MONTGOMERY, J., dissenting.

FRANCHINI, J., concurring in dissent.

MONTGOMERY, Justice (dissenting).

I disagree with the result reached in the majority opinion, with the majority's holding concerning Rule 410, and especially with the rationale advanced to support that holding.

As for the result, affirming the convictions is not particularly offensive, because there probably was enough evidence, apart from Anderson's statements to Officer Olson, to enable a jury to find beyond a reasonable doubt that he had committed the murder and the robbery—notwithstanding the trial court's characterization of the evidence connecting defendant with the crimes (at least the robbery) as "razor thin" and "a vexatious problem." The evidence of Anderson's guilt certainly was not overwhelming, as indicated by the prosecution's heavy reliance in its closing and rebuttal arguments on the statements to Officer Olson. The prosecutor drew the jury's attention to those statements no less than five times in his closing argument and an additional five times in final rebuttal, saying at one point, "[W]hy did this man offer to confess to it? ... 'I'll confess to the murder, but I want to know what the deal is, and I want it in writing.'" Indeed, it is no exaggeration to say that Anderson's "confession" was the centerpiece of the State's case against him. The trial court's admission of his statements, if erroneous, certainly could not be deemed harmless error, because no rational reviewing court could say with any confidence—and certainly that there was no reasonable possibility—that the error did not contribute to Anderson's convictions. *See Clark v. State*, 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) (Error in admission of evidence in criminal trial is "not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction."); *cf. Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (for court to hold federal constitutional error harmless, court must be able to declare it harmless beyond a reasonable doubt). Consequently, if the trial court erred in admitting Olson's testimony, as I believe it did, then the convictions must be reversed.

As for the holding that admission of Anderson's offer to confess did not violate Rule 410, the holding is defensible based on the federal and state caselaw cited by the majority (*not* on the "reliance" rationale advanced by the majority), though I would adopt the opposite holding based on caselaw more directly related to our current rules and on the considerations set out below. In this connection, it is worth recalling the exact wording of Rule 410:

> Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of *an offer to plead guilty* or nolo contendere *to* the crime charged or *any other crime,* or of *statements made in connection with any of the foregoing* pleas or *offers,* is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
>
> [Emphasis added.]

It is also worth noting exactly what Officer Olson testified to concerning Anderson's offer. (The testimony was given out of the presence of the jury when the State made an offer of proof to enable the trial court to rule on the admissibility of the evidence.) Olson, the Texas law enforcement officer who had conversed with Anderson after the New Mexico investigators had left the room while Anderson was in custody in Texas and charged with residential and commercial burglaries, testified as follows:

Olson: We were just discussing different things and he looked at me and said "I'd like to make a deal." and I said "What?" And he said "I'll give you a confession if we can work something out."

Prosecutor: Do you remember his deal, his words, any more precisely?

Olson: He said he'd give me a confession to the murder if we could work something out.

Prosecutor: Was there any other condition that he placed on it?

Olson: Uh yes, it would have to be in writing.

Prosecutor: Realizing I just told you not to say anything about Texas charges, but since the jury is out, what did he say about that?

Olson: That I'd have to drop the charges on him and have it in writing and he'd give me a confession.

The court accepted the offer of proof, recalled the jury, and permitted Olson to testify to substantially the foregoing effect—without, of course, any reference to dropping the Texas charges. Olson made it clear, both in his in-chambers testimony during the offer of proof and in his subsequent testimony to the jury, that Anderson had not given him an actual "confession" to the murder, but rather that such a confession might be forthcoming if the stipulated conditions were met.

In light of the wording of the rule and Officer Olson's testimony in chambers about his conversation with Anderson, some legitimate questions can be asked concerning the proper interpretation of the rule and its application to this case. These include: (1) Was Anderson's offer to confess an "offer to plead guilty" within the contemplation of Rule 410? (2) Does Rule 410 apply to a conversation between a suspect and a law enforcement officer, or is it limited, as is the corresponding federal rule, to conversations between the accused and "an attorney for the prosecuting authority"? [1]

---

1. The federal rule, as amended effective December 1, 1980, reads in pertinent part as follows:

    Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
    (1) a plea of guilty which was later withdrawn;
    (2) a plea of nolo contendere;
    (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
    (4) any statement made in the course of plea discussions *with an attorney for the prosecuting authority* which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
   Fed.R.Evid. 410 (emphasis added).
    Before the 1980 amendment, the pertinent part of the rule was almost identical to our own Rule 410 as presently worded. *See United States v. Robertson,* 582 F.2d 1356, 1364 n. 18 (5th Cir. 1978).

The State discusses these questions, relying in significant part (as does the majority opinion) on the 1979 amendment to Fed. R.Crim.P. 11(e)(6),[2] which the State (like the majority opinion) treats as a "clarifying amendment" designed to make more explicit the original intent behind the pre–1979 rule, and on cases drawing a sharp distinction between a "confession" or an "admission" and an "offer to plead guilty." *None* of the State's authorities suggests the "reliance" or "awareness of the protection of the rule" rationale advanced by the majority here. Indeed, that rationale appears to be unprecedented and unsupported by any of the authorities that the majority cites.

The majority does recognize the existence of cases reaching a result contrary to the one it favors—*United States v. Herman,* 544 F.2d 791 (5th Cir.1977); *United States v. Brooks,* 536 F.2d 1137 (6th Cir.1976); *People v. Friedman,* 79 Ill.2d 341, 38 Ill.Dec. 141, 403 N.E.2d 229 (1980)—but dismisses these cases as having been "overturned legislatively" or as having reached the wrong result.

While it is true that *Herman* and *Brooks* were overturned by Congress's 1979 amendment to Rule 11(e)(6) of the Federal Rules of Criminal Procedure and the corresponding amendment to Rule 410 of the Federal Rules of Evidence, I believe that that fact argues in favor of construing and applying our own Rule 410 (and our corresponding SCRA 5–304(F)) consistently with the pre–1979 federal cases—not, as the majority does, by construing and applying the rule as if New Mexico had already adopted the federal amendments. Neither Rule 410 nor Rule 5–304(F) has been amended to conform to the federal amendments in the thirteen years since those amendments took effect. Rule 5–304 has been amended at least four times

since 1979; none of those amendments introduced language paralleling the federal amendment.

Thus, I would follow cases like *Herman* and *Brooks,* which hold that a suspect's statements to a government investigator or law enforcement officer, if made in connection with an offer to plead guilty to a crime (whether or not the suspect has been "charged"), are covered by the rule and inadmissible even though the government official may not have actual authority to negotiate a plea. *See Herman,* 544 F.2d at 798 ("The twin goals of encouraging unrestrained plea negotiations and assuring fairness to defendants dictate that any statements made by a defendant as part of an effort to reach a plea agreement must be excluded; it makes no difference that the defendant's efforts are misguided because the official cannot or will not accept the offer."); *Brooks,* 536 F.2d at 1139 (where defendant called postal inspector and offered to plead guilty if sentenced to maximum of two years, " 'The testimony concerning the discussion between the agent and [the defendant] should not have been admitted. It should not have been made the subject of comment in the closing argument.' ") (quoting *United States v. Ross,* 493 F.2d 771, 775 (5th Cir.1974)).

I would also follow cases like *Friedman* and *People v. Oliver,* 111 Mich.App. 734, 314 N.W.2d 740 (1981), both of which applied rules substantially similar (*Friedman* ) or virtually identical (*Oliver* ) to our own Rule 410. In *Friedman,* the defendant telephoned an investigator for the state, inquired about "making a deal," and stated, "If I'm convicted, I would rather go to a Federal prison as opposed to a State prison." 38 Ill.Dec. at 146, 403 N.E.2d at 234. The trial court admitted the investigator's testimony about

---

**2.** Before its amendment in 1979, the pertinent part (the first sentence) of federal Rule 11(e)(6) was substantively identical, or virtually so, to our own current Rule 5–304(F), which reads: "Evidence of a plea of guilty, later withdrawn, a plea of no contest or guilty but mentally ill, or of an offer to plead guilty, no contest or guilty but mentally ill to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer." For the

text of the pre–1979 federal rule, *see United States v. Herman,* 544 F.2d 791, 795 n. 6 (5th Cir.1977).

As amended in 1979, federal Rule 11(e)(6), like the current and corresponding federal rule of evidence, makes inadmissible "any statement made in the course of plea discussions *with an attorney for the government* which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Fed.R.Crim.P. 11(e)(6)(D) (emphasis added).

this conversation, but the Supreme Court of Illinois upheld an appellate court's reversal, pointing out "the devastating effect of the introduction of plea-related statements in the trial of the accused." The supreme court continued:

> The fact that the party to whom this statement was made did not have the actual authority to enter negotiation is not, standing by itself, sufficient to render the statement admissible. Defendant could have reasonably assumed that [the investigator] was an appropriate party to whom he could convey his offer to bargain.

*Id.*, 38 Ill.Dec. at 147, 403 N.E.2d at 235 (citation omitted).

In *Oliver*, the Michigan court reversed defendant's conviction of first degree murder because the trial court had erroneously admitted an investigating officer's testimony that the defendant had inquired, "[I]f I said I did it, would it still be first degree murder[?]" and because the prosecutor (as in the present case) had reminded the jury in closing and rebuttal arguments of the defendant's offer to plead, asking rhetorically (as in the present case), "Why did the defendant plea bargain and why did he say if I say I did it, would it still be murder in the first degree?" 314 N.W.2d at 750. The court commented: "The nature of defendant's question indicates a subjective expectation to negotiate a plea. Moreover, it does not appear that this expectation was unreasonable.... It was reasonable for defendant to assume that [the investigating officer] could be talked to regarding a plea to reduce charges." *Id.* at 751.

Both *Friedman* and *Oliver* rely on pre–1979 federal cases, including *Herman* and *United States v. Robertson*, 582 F.2d 1356 (5th Cir.1978). In the latter case, the Court of Appeals for the Fifth Circuit formulated its well-known "two-tier" analysis: "first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion," and "second, whether the accused's expectation was reasonable given the totality of the objective circumstances." *Robertson*, 582 F.2d at 1366. This analysis was recognized as valid in *Friedman* and *Oliver* and is still used by courts, at least

in jurisdictions that have not adopted the federal restrictions, to evaluate a defendant's claim that he was involved in plea-related discussions. *See, e.g., State v. Little*, 527 A.2d 754, 757 (Me.1987); *McKenna v. Nevada*, 101 Nev. 338, 705 P.2d 614, 618–19 (1985). As these cases, and *Robertson* itself, demonstrate, use of the *Robertson* analysis does not always lead to a ruling that a suspect's offer to incriminate himself is inadmissible; in many cases the defendant making the offer will not evince a subjective expectation to negotiate a plea or, if he does, the expectation will not be objectively reasonable. In *Robertson*, the defendant incriminated himself and another in a conversation with government agents in an attempt to secure the immediate release of their female companions:

> [Defendant] and [the co-accused] were then only concerned with gaining the release of the women. Knowing that what they said would be brought to the attention of the "Judicial Authorities," they detailed their involvement and sought to exonerate the women. This, then, was the only purpose of the parking lot conversation [with the agents]: they admitted their own complicity in order to exonerate the women. They did not offer to plead guilty. They did not even contemplate pleading guilty.

*Id.* at 1369–70. Since defendant's admission was neither an offer to plead guilty nor a statement made in connection with such an offer, his statements in the parking lot were properly admitted and his conviction was affirmed. *Id.* at 1371.

As the majority notes, the court in *Robertson* held that an offer to confess is not a plea negotiation. However, the court most definitely did not hold that an offer to confess, to be followed in the ordinary course by a guilty plea, is always admissible unless an express willingness to plead guilty accompanies the offer.

> The initial inquiry into the accused's subjective state of mind must be made with care to distinguish between those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement. The trial court

must appreciate the tenor of the conversation. In those situations in which the accused's subjective intent is clear and the objective circumstances show that a plea bargain expectation was reasonable, the inquiry may end. For example, if the accused unilaterally offers to "plead guilty," or to "take the blame," in exchange for a government concession, then the policy underlying Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 is served only if the discussions are held inadmissible. That is not to say that we *require* "a preamble explicitly demarcating the beginning of plea discussions," *United States v. Herman*, 544 F.2d at 797. Yet, when such a preamble *is* delivered, it cannot be ignored. Indeed, even when such nascent overtures are completely ignored by the government, such express unilateral offers ought to be held inadmissible, if the context is consistent.

*Robertson*, 582 F.2d at 1367 (citations omitted). *See also id.* at 1371–72 (concurring opinion):

> When such a confession is the result of bargaining, I do not believe the protection of the rules should depend on whether the accused utters a few magic words like, "and, of course, I'm also going to plead guilty." ... Thus, I conclude that ordinarily a bargained for confession is tantamount to a plea negotiation because the reasonable expectation of all parties is that the question of innocence will be disposed of without trial.

The Michigan court in *Oliver* applied these realistic principles when it observed that the defendant's question "If I said I did it, would it still be first degree murder[?]" indicated a subjective expectation to negotiate a plea. 314 N.W.2d at 751. Similarly, in the present case, Anderson's offer to plead guilty to the murder, viewed realistically, indicated a subjective expectation to negotiate a plea in exchange for Olson's (or someone's) dropping the Texas burglary charges. To expect that Anderson would append to his offer a ritualistic formula like "and, of course, I'm also going to plead guilty," and to insist that Anderson's subjective expectation was unreasonable because he should have recognized

that Officer Olson had no authority to negotiate a plea (*i.e.*, to arrange for dropping the Texas charges in exchange for a confession to the murder) is the height of artificiality. *See Herman*, 544 F.2d at 798 ("An accused does not have ready in hand an almanac showing the jurisdictions and powers of the various public officials.").

Finally, I return to the majority's novel "reliance" and "awareness of the protection of the rule" rationale to support its holding. I certainly agree with the majority that Rule 410 should be construed in light of its purpose, which, as the majority says, is to encourage negotiations between the defendant and the government. But I cannot see how the majority's holding that "absent a finding by the court that statements were made in the belief they were under the protection of the rule, ... there is no reason to presume that [the defendant] was motivated to make inculpatory statements in reliance on the rule" furthers this purpose. Indeed, I believe that the "twin goals of encouraging unrestrained plea negotiations and assuring fairness to defendants[,]" *Herman*, 544 F.2d at 798, are undermined, not promoted, by the majority's rigid "reliance" and/or "inducement" rule. To borrow from some of *Herman*'s language, *id.* at 796–97 (making a different, but related, point): "Defendants must be free to participate in open and uninhibited plea discussions, and their decisions to do so must not later be subjected to microscopic judicial examination to determine whether the statements were" made with knowledge of, and consequent reliance upon, the protection afforded by the rule.

I know of no other evidentiary rule whose protection is extended only to a party who knows about, and relies upon, the protection afforded by the rule. For example, the attorney-client privilege and the psychotherapist-patient privilege apply to the client and the patient regardless of whether he or she is aware of the privilege. *See* SCRA 1986, 11–503 (lawyer-client privilege) and 11–504 (psychotherapist-patient privilege) (both rules defining "confidential" communications; neither including in definitions any requirement that communicator know about or rely upon privilege afforded by rule); *see also* 81 Am.Jur.2d

*Witnesses* § 377 (1992) (stating that it is not necessary for protection of client against disclosure of communications to client's attorney that communications be made under injunctions of secrecy and that it is sufficient that attorney-client relation subsists between the parties; if law were otherwise, client would repeatedly have to preface statements to counsel with warning that they were confidential in order to be assured that court might not subsequently deem communications nonconfidential). The purpose of these rules is to facilitate candor, trust, and productivity in the respective relationships. That purpose can hardly be achieved by a "microscopic judicial examination" of whether a particular client or patient, in a specific case, knew about and relied upon the evidentiary rule.

I would reverse the convictions and remand for a new trial. The majority having decided otherwise, I respectfully dissent.

FRANCHINI, J., concur.